**J. C. MATLOCK, Jr., Thomas Bailey, Laurence B. Compton, and Total Assets Protection, Inc., Appellants,**

v.

**DATA PROCESSING SECURITY, INC., Appellee.**

No. 18432.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 30, 1980.

Rehearing Denied Nov. 26, 1980.

Cantey, Hanger, Gooch, Munn & Collins and Ralph H. Duggins, III, Fort Worth, for appellants.

McLean, Sanders, Price, Head & Ellis and Albon O. Head, Jr., Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

For purpose of appeal the case may be viewed as one where Data Processing Security, Inc. (DPS) sought and obtained tem-

porary injunctive relief against its former employees, J. C. Matlock, Jr., et al. and against Total Assets Protection, Inc., the corporation said employees had formed to compete with their former employer.

We affirm the decree of temporary injunction.

Basically this is the common situation where employees, contrary to contractual provisions in their employment contract proscribing competition with their employer for a period after severance, nevertheless join together and form a business in competition with him. Quite common is the formation of a new corporation by which to begin such business, and that is what was done in the instant case.

A contention, this by all former employees, (J. C. Matlock, Jr., et al.), is that by the evidence each contract is shown voidable, and for that reason void for want of consideration, because their execution of the "non compete" agreements was required after they had already entered into the service of DPS as the employer, without any additional consideration to support their contracts not to compete.

After having executed the contracts all of them continued in the service of DPS. Nevertheless each of them charges to be void the contract he has signed, under which he has performed in whole or in part, though it was known that he would be discharged if the contract were not signed. To sign the contracts was shown to have been a requirement if there was desire to continue in the employment of DPS. Matlock, et al. cannot claim benefit by the contention. One cannot successfully plead want of consideration, or unilateralness, in a contract which he has performed in whole or in part. Furthermore there is consideration for the contract because, knowing there would be discontinuance of the employment relation if it was not executed, each did contract so that it would continue. *Bettinger v. North Fort Worth Ice Co.*, 278 S.W. 466, 469 (Tex.Civ. App.–Ft. Worth 1925, no writ); *McAnally v. Person*, 57 S.W.2d 945 (Tex.Civ.App.– Eastland 1933, writ ref'd).

A contention by two of those comprising Matlock, et al. was that they were not bound not to compete with DPS because each had signed his contract in Illinois, where the employer was then domiciled, because by the laws of that state the contracts would not be enforceable against them. They contend that, by Illinois law the provision against competition in the entire United States was illegal as providing for too great a "space" or area in which they were forbidden to compete. In furtherance they claim that the material provisions of contract were wholly void and unenforceable by the courts of any state, whether or not the laws of such state provide as does Illinois.

There is exhaustive argument upon the state of Illinois law. We have concluded that for our purposes we may accept such law as having provided unenforceability of the contracted "non compete" clause of the employment contracts because as to permissible "space" the provision for the area of the entire United States would be avoidable, and as such by the evidence produced as void, plus the further acceptance of the fact that by the laws of the State of Illinois to render the entire agreement not to compete utterly void and unenforceable even in an area where to enforce it would have been reasonable and proper. (We are not to be understood as expressing an opinion on Illinois law.)

Even with the acceptance, however, we hold the Illinois law to be without application in our resolution of the controversy. Initially we take note that, in common with the ordinary "non compete" contracts, those under scrutiny are entirely silent, even by any permissible implication, upon the place of performance by any of the employees included in Matlock, et al.

Where such a situation obtains resolution of the question of place of perform-

ance of the contract requires that we look to the intention of the parties, and, where necessary, apply the maxim that the safest rule is to deem applicable the law of the forum which holds the contract legal and valid and enforceable rather than to attribute to the parties an intent to make an illegal and unenforceable contract.

A leading case by which our conclusion is fortified is that of *W. A. Ryan & Co. v. M., K. & T. R'y Co.*, 65 Tex. 13 (1885), involving a contract entered into in the state of Missouri with a carrier, which carrier was to make delivery of goods to a consignee in Honey Grove, Texas but which were destroyed by fire while in–transit. Suit was brought in Texas against the carrier and it advanced the defense that its contract (the bill of lading) contained exemption from liability in the event of loss by fire. The carrier prevailed in the trial court because of the contract exemption, which, though valid by Missouri Law, was invalid—as forbidden—by the law of Texas. On appeal the trial court's judgment was reversed and remanded. The Supreme Court held that Texas law ruled the case and that in Texas the provision of contract upon which the carrier relied did not operate to limit the carrier's liability. The court wrote thereon, as follows:

"It was, in effect, admitted upon the trial that common carriers could, by the law of Missouri, where the present contract was made, place such restrictions upon their common law liability as are contained in the bill of lading upon which this suit is based. [As] [t]he law of our state, in which the contract was in part to be performed, forbidding such restrictions, it is of vital importance to ascertain whether the validity of the contract is to be governed by the law of Texas or that of Missouri.

"It is admitted law that when a contract is to be wholly performed within a state, the laws of that state must furnish the rule as to its validity. The parties have their attention drawn to the law of the state in which alone the contract can be broken and liability incurred, and it must be presumed that they intended that their rights and obligations should be determined by the laws prescribed by that state upon the subject. But when the contract is not to be wholly performed in any particular state, but partly performed in the state where it is made and partly in another, or several others, there is difficulty in laying down any rule which can be rested upon principles entirely satisfactory. Hence, there is some diversity of opinion among courts and law writers upon the subject. The foundation principle seems to be that the presumed intention of the parties must govern. If, from all the circumstances surrounding the contract, it is reasonable to suppose that they had in view, at the time, the law of the place of the contract, that must prevail; if the law of the destination of the goods in reference to the carriage of which the agreement, then that law must govern. When there are no circumstances attending the transaction, except the mere execution, delivery and acceptance of the bill of lading, the safest rule by which to arrive at the intention of the parties is that which upholds the contract rather than that which defeats it. Parties to a contract are presumed to intend that it shall be enforced. It is not to be presumed that they deliberately executed an agreement, knowing that it was invalid."

Clarification is to be found in Restatement of the Law, Conflict of Laws, Sec. 332 (1934), "Law Governing Validity of Contract", under its Comment "c", "Duty and performance thereof", stating generally, that a difficult problem is presented in deciding whether a question in dispute concerning a contract is one involving the creation of a problem or performance thereof. Thereafter is stated that the applicability of the rule that the complete control of all questions is determined by the law of the place of contracting is therefore modified upon practical considerations when to be

considered are the acts to its performance. Then, is stated: "One law is applied to what is regarded as the initiation of a contract and another to what is regarded as its final performance."

See also Restatement of the Law, Conflict of Laws, Sec. 370 (1934), "Law Determining Breach of Performance"; and Sec. 355, "Place of Performance"; *Mamlin v. Susan Thomas, Incorporated*, 490 S.W.2d 634, 637 (Tex.Civ.App.–Dallas, 1973); Hans W. Baade, *Conflict of Laws*, 28 S.W.L.J. 166, 203, 204 (1974).

In Restatement (Second) of the Law (1969), there is departure from the section numbers of the original Restatement; for example Sec. 196, "Contracts for the Rendition of Services", is a part of Sec. 332 of the original Restatement. However, there is no change only more detail in the comments thereunder. On these see Comment b., "Place where services are to be rendered", and Comment d., "When local law of state where services are to be rendered will not be applied."

Another contention is that, even if the case is ruled by the Texas law the provision of the temporary injunction that—until trial on the merits as for permanent injunction—it should be effective to prohibit Matlock, et al. and their company, Total Assets Protection, from engaging in competing business anywhere in the United States is fatally overbroad. The contention is that even if their contract has some validity and in any respect is enforceable by court decree, nevertheless that as to contract provision "space" should be materially diminished by the decree of the appellate court.

■ Noted is that by the law of Texas is established that, in such cases, the courts will render such provisions unenforceable only to the extent found not to be necessary for the protection of the interests of the former employer. Where the provisions are overbroad courts will judicially reform the contract of the parties so as to provide proper limitations as to "time" and "space",

and will then enforce the contract as reformed. *Spinks v. Riebold*, 310 S.W.2d 668 (Tex.Civ.App.–El Paso 1958, writ ref'd); *Lewis v. Krueger, Hutchinson and Overton Clinic*, 153 Tex. 363, 269 S.W.2d 798 (1954); *Wright Hydraulics, Inc. v. Womack Machine Supply Co.*, 482 S.W.2d 34 (Tex.Civ. App.–Ft. Worth, 1972, no writ.)

■ An initial impression is that the injunction is indeed overbroad as applied to the area in which it is to be effective. However, by the evidence is revealed that it is not an excessive area and that there was no abuse of discretion by the trial court in decreeing that it be effective as applied to the entire United States. That is the area as applied to which Matlock, et al. did contract in writing. By the testimony of the parties enjoined was there admission that DPS did business "nation–wide", and that there was the desire to compete with it "nation–wide". Furthermore, at least some of those comprising Matlock, et al. were shown to have been officers of DPS and while acting as such as well as employees were responsible for the preparation, in 1979, of the list of prospective customers of DPS to be the principle objectives for new contracts in 1980. It goes without saying that by the entrustment there could have been omission from the list of at least some who might have been properly added but were "reserved" for the benefit of the new company anticipated to be formed at the very time the list was prepared.

Perhaps there was one or more areas in the United States in which DPS would not suffer irremedial harm by competition of the new company of Matlock, et al., but if there was its location could not have been known. That is so because under the circumstances, the former employees and not DPS would have been aware of it and because they, while DPS employees, had been charged with the duty of preparation of the 1980 program. Though there was not too much proof indeed there was some on "space" as necessary for the injunction to have application until time for trial to be

held on the merits of permanent injunction. The quantity of proof was sufficient to support the trial court's decree of temporary injunction over the United States as the area necessary if DPS is to be protected from irremedial harm.

 Without necessity to enter into discussion of the evidence relative to the use by Matlock, et al. of "trade secrets", in principal part the confidential information of DPS, we state that it has been examined and that there is some evidence supporting the injunctive relief relative thereto granted by the court. Indeed, it was shown by the contracts themselves that the parties had contracted, *inter se*, that such should constitute the property of DPS. As applied thereto the matter of "space" and "time" is of little importance for anyone attempting to benefit by the use of the property of another, to the user's benefit or to the owner's detriment, may be enjoined from so doing where the circumstances demonstrate the inadequacy, as here, of any remedy at law as for damages.

The effect of a decree granting a temporary injunction is to maintain the status quo and not to adjudicate the issues, though a controlling issue of law necessarily decided as a ground for issuance of the temporary writ might have the effect of determining the outcome a part or all of the whole case. Vol. 6, Texas Practice, Remedies, Injunctions and Other Extraordinary Proceedings (2nd Ed.) p. 235, "Judgments, Orders and Enforcement", sec. 243, "Temporary Injunction".

Upon an appeal from temporary injunction the appellate court will not set it aside unless it be established that the trial court abused its discretion in entering the order, and will affirm the judgment if there is any evidence to support it where the state of the evidence is the important matter to be determined. Vol. 6, Texas Practice, p. 255, "Appeals", sec. 263, "Temporary Injunctions". Of course if there has been

the failure to apply correct law or a misapplication of the law by the trial court the appellate court's order will correct where it may be appropriate to be done, otherwise reverse where essential to the validity of the judgment order.

We have severally considered all complaints by points of error presented on appeal. We overrule all of them.

Affirmed.