UNIVERSITY OF TEXAS MEDICAL SCHOOL AT HOUSTON, M. David Low, M.D., and John Ribble, M.D., Appellants,

v.

Allan THAN, Appellee.

No. 01–91–01431–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 16, 1992.

Dan Morales, Atty. Gen., Leo Barnes, Tammy L. Stroud, Asst. Atty. Gen., Austin, for appellants.

Bruce Coane, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and DUNN, JJ.

## OPINION

WILSON, Justice.

The sole issue presented for review in this appeal is whether the trial court abused its discretion in granting a temporary injunction that allowed Allan Than, appellee, to complete his medical studies at the University of Texas Medical School at

Houston.[1]  We hold that the trial court did not abuse its discretion and affirm.

## Summary of Facts

Than completed his fourth year of medical school at the University of Texas Medical School at Houston (the medical school) in June of 1992.  As part of Than's medical education, he was required at various times to take national medical board exams, referred to as the NBME.  On February 22, 1991, Than took the surgery NBME with other medical students in a test room supervised by proctors.  During the exam, two of the proctors suspected that Than was glancing at another student's answer sheet.  On March 12, 1991, the associate dean for student affairs contacted Than and told him that he was suspected of cheating on the NBME surgery exam.

On April 4, 1991, the medical school sent Than a letter advising him that he was charged with academic dishonesty.  The letter stated that he would be afforded a hearing, in accordance with The Rules and Regulations of the Board of Regents of the University of Texas System for the Government of the University of Texas System (the rules and regulations).  The hearing took place on April 18, 1991.  On April 28, 1991, the hearing officer issued her decision that recommended Than be expelled from the medical school.  Than appealed the recommendation to appellant David Low, M.D., who is President of University of Texas Health Science Center at Houston.  On May 9, 1991, Than received a letter from appellant John Ribble, M.D., Dean of the medical school, that informed Than that he could not participate in any clinical clerkship activities at the medical school unless and until Dr. Low reversed the decision of the hearing officer.

On May 24, 1991, Than filed a lawsuit against appellants, seeking a temporary restraining order, temporary injunction, and permanent injunctive relief.  Than claimed violation of due process rights and breach of contract.  The case was removed to federal court, where Than obtained temporary restraining orders that allowed him to continue his studies.  The record reflects that the case was returned to state court, where Than was granted a temporary restraining order, and the trial court set a date for a hearing on the request for temporary injunction.

After a hearing on November 18, 1991, the trial court concluded that Than proved that he will probably prevail on the merits of his due process claim against appellants and entered a temporary injunction order that provides, in pertinent part:

1.  That Defendants treat Plaintiff, with respect to his continued studies and other activities within and in connection with medical school, such as registering for and attending classes, performing clinics and taking examinations, as a student in good standing;

. . . .

4.  That Defendants respond as they would to any similarly situated student in good standing, to Plaintiff's request for all letters and other information required by Plaintiff in making his application(s) for residencies.  Defendants may, however, apprise any institution to whom such information is sent of the pendency of this litigation by including with such information a letter or statement that is worded as follows: "Please be advised that there is litigation pending at this time between Mr. Allan Than and the University of Texas Medical School concerning Mr. Than's surgery NBME grade.  The outcome of this litigation may or may not affect Mr. Than's recorded grade for surgery and his standing at the University."  If the University receives any inquiries as a result of such a letter, it shall maintain the confidentiality of its internal hearing and shall not disclose its previous determination that Plaintiff was guilty of academic dishonesty and expelled, and shall limit its response to informing the inquiring institu-

---

1.  This interlocutory order is appealable under section 51.014(4) of the Texas Civil Practice and Remedies Code.  *See Henderson v. KRTS, Inc.,* 822 S.W.2d 769, 771 n. 1 (Tex.App.—Houston [1st Dist.] 1992, n.w.h.).

tion of the style and cause number of this litigation; ...

The trial court's order granting the temporary injunction against the medical school was entered on November 26, 1991. This Court is not aware of any future date setting the case for a trial on the merits. Previous settings have been continued by request of the parties.

### Relief Requested by the Parties

Appellants now appeal the trial court's grant of the temporary injunction. In a single point of error, they contend that the district court erred in granting the temporary injunction because Than did not show a probable right of recovery. Than has requested that this Court grant his emergency motion to find the medical school in contempt for its alleged violation of the temporary injunction order and to order that the school issue Than's Certificate of Professional Education to the University of Virginia Health Science Center, furnish Than with his medical diploma for the purpose of completing the FLEX examination, and order that Than be permitted to participate in commencement proceedings on June 5, 1992.

On June 4, 1992, this Court ordered the medical school to permit Than to participate in graduation proceedings as would a student in good standing, without prejudice to either of the parties as to a final determination on the merits of his trial. *University of Texas Medical School at Houston v. Than*, 834 S.W.2d 422 (Tex.App.— Houston [1st Dist.], 1992) (order); *see* TEX. R.APP.P. 43(c). Our order did not require the medical school to issue a diploma to Than at graduation.

### Temporary Injunction

#### Standard of Review

##### 1. The trial court

■ Appellants maintain that the district court erred in granting the temporary injunction because Than has not shown a probable right of recovery. To be entitled to the issuance of a temporary injunction, an applicant must plead a cause of action and show a probable right of recovery and a probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex.App.—Houston [1st Dist.] 1992, n.w.h.); *Miller v. K & M Partnership*, 770 S.W.2d 84, 87 (Tex.App.— Houston [1st Dist.] 1989, no writ). Probable injury includes the elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *Surko Enter., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.— Houston [1st Dist.] 1989, no writ).

■ At the hearing for a temporary injunction, the only question before the trial court is whether the applicant was entitled to an order to preserve the status quo pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Martin v. Linen Sys. for Hosp., Inc.*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). The status quo is defined as the last, actual, peaceable, noncontested status that preceded the controversy. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

■ An order granting a temporary injunction should not adjudicate the issues. *Matlock v. Data Processing Sec., Inc.*, 607 S.W.2d 946, 951 (Tex.App.—Fort Worth 1980), *aff'd*, 618 S.W.2d 327 (Tex.1981). Rule 683 of the Texas Rules of Civil Procedure requires the trial court to state the reasons why the court deems it proper to issue the writ to prevent injury to the applicant, including any reasons why the court believes the applicant's probable rights will be endangered if the writ is not issued. *Transport, Co. of Tex. v. Robertson Transp., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953); *Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 210 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).

##### 2. The reviewing court

■ The appellate court's review of the temporary injunction is limited to whether the trial court clearly abused its discretion in granting the order; this Court will not decide the merits of the underlying

cause. *Davis,* 571 S.W.2d at 861–62; *Moreno,* 808 S.W.2d at 211. The reviewing court may not substitute its judgment for that of the trial court. *Henderson,* 822 S.W.2d at 773. We must determine whether the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Moreno,* 808 S.W.2d at 211. The trial court abuses its discretion when it misapplies the law to established facts or when it concludes the applicant has a probable right of recovery, and the conclusion is not reasonably supported by the evidence. *Southwestern Bell Tel. Co.,* 526 S.W.2d at 528; *Eastern Energy, Inc. v. SBY Partnership,* 750 S.W.2d 5, 6 (Tex.App.—Houston [1st Dist.] 1988, no writ).

Hearing on the Temporary Injunction

At the hearing on the temporary injunction, the trial court heard testimony from Dr. Ribble, Dr. Low, Dr. McNeese, Than, and Professor Michael A. Olivas, who is Associate Dean for Research at the University of Houston Law Center. Other evidence offered by the parties included the following: the University of Texas Medical School Guidelines; the transcript of the student disciplinary hearing; letters from Dr. Hebert to Dr. Low, from Dr. Reed, associate professor of psychiatry and director of undergraduate education, to Dr. Low, and from Dr. Collura to Dr. Low; Professor Olivas' resume; pages from the NBME Chief Proctor's Manual; letter of appeal from Than; the medical school's rebuttal to the appeal letter; Dr. Low's letter regarding Than's appeal; and a copy of the Board of Regents' rules and regulations.

Trial Court's Findings

After hearing the testimony of the witnesses and reviewing the evidence presented at the hearing, the trial court made the following findings of fact:

1. Defendants University of Texas Medical School at Houston, Dr. John C. Ribble, M.D., and M. David Low, M.D. ("Defendants") conducted a disciplinary hearing with Plaintiff that materially deviated from the school's own minimal guarantees of due process as expressed in the Regents Rules ("Rules") in the following respects:

a. According to the Rules, Plaintiff should have been permitted the right to cross-examine all witnesses against him. Plaintiff was denied this right through Defendants' use of information obtained from a person at the NBME concerning a statistical analysis of Plaintiff's surgery NBME with the test of one or more other students. Such person was not present and available for cross examination at the disciplinary hearing; but the testimony was, instead, presented to and considered by the hearing officer in letter form. Both the Hearing Officer's written findings and the testimony of Dr. McKenzie [sic] indicate that the NBME statistical analysis played a substantial role in the disciplinary action taken against Plaintiff;

b. The Rules require that Plaintiff be given written notice of the witnesses, documents and other evidence to be used against him at the disciplinary hearing. Although Plaintiff was given written notice of some witnesses and documents, he was not apprised that his academic record, specifically his recent performance on a psychiatry examination, would be presented at the hearing. Such evidence was presented, and the written findings of the Hearing Officer shows [sic] that she relied heavily upon this information as an indication of motive in reaching her determination that Plaintiff did, in fact, cheat on his surgery NBME;

c. Additional evidence was considered by the Hearing Officer after the hearing was closed and outside the presence of Plaintiff. Specifically, after closing the hearing, the Hearing Officer visited the classroom where Plaintiff's surgery NBME was administered to determine what view Plaintiff had of another student's examination. Plaintiff was told by the Hearing Officer that he could not accompany her. Nonetheless, the Hearing Officer relied heavily upon her personal visit to the room in making her recommendation that disciplinary action be taken against Plaintiff.

2. Defendants also failed to observe their own guidelines concerning the manner in which students are to be confronted if a proctor has evidence of or suspects cheating by a student during an examination. The women overseeing the surgery NBME had these guidelines available to them at the time of the alleged cheating by Plaintiff, but did not follow them. These guidelines, which attempt to ensure that the possibility of cheating is confronted expeditiously and while the circumstances surrounding the allegations are fresh, appear to exist for the protection of the student, as well as, the school. Plaintiff was deprived of the benefits of these guidelines because he was not advised of the charges against him until nearly three weeks after the examination.

3. Plaintiff, who is presently in his fourth year of medical school and is preparing for graduation and applying for residencies, will suffer immediate, irreparable harm in the pursuit of his medical degree and in fulfilling the requirements necessary to become a licensed physician in his chosen area of specialty if injunctive relief is not granted at this time....

Abuse of Discretion

On appeal from the granting of the temporary injunction, the medical school does not challenge the trial court's findings of fact or the evidence supporting such findings. Nor does the medical school contend in its point of error that the trial court applied an incorrect legal standard in concluding that there was some evidence that Than would probably succeed on the merits of his due process claim. The medical school asserts that the district court erred in granting the temporary injunction because Than has not shown a probable right of recovery.

1. Due process afforded for academic dismissal

■ Our review of relevant case law concerning expulsion from professional school indicates that courts view disciplinary measures taken against students differently from actions taken against students for academic reasons. *See Jaksa v. Regents,* 597 F.Supp. 1245, 1249 (E.D.Mich.1984), *aff'd,* 787 F.2d 590 (6th Cir.1986); *Eiland v. Wolf,* 764 S.W.2d 827, 833 (Tex.App.— Houston [1st Dist.] 1989, writ denied). If a student is dismissed for academic reasons, a reviewing court will not disturb the decision unless it was motivated by bad faith or ill-will unrelated to academic performance, or was based on arbitrary and capricious factors not reasonably related to academic criteria. *Eiland,* 764 S.W.2d at 833. The standard of review for due process afforded a student for an academic dismissal is that a court will not interfere with the school's action if it finds some rational basis for the action. *Id.* at 834.

2. Due process afforded for disciplinary dismissal

■ In the present case, the medical school states that Than would not have been expelled for receiving a failing grade on his surgery exam; he would have been given the opportunity to retake the exam. Instead, he was accused of "scholastic dishonesty," given a failing grade rather than the grade he achieved on the exam, and expelled from school. Than's punishment for allegedly cheating on the exam, i.e., a failing grade and expulsion from medical school, was disciplinary in nature, not academic.

■ Once a court determines that due process applies, the question of what process is due must be determined. *Goss v. Lopez,* 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1974) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). A state university student accused of dishonesty concerning an exam is entitled to a higher level of procedural due process. *Jaksa,* 597 F.Supp. at 1249.

■ The ultimate test of due process of law in an administrative hearing is the presence or absence of rudiments of fair play and fundamental fairness. *James v. Wall,* 783 S.W.2d 615, 619 (Tex.App.— Houston [14th Dist.] 1989, no writ). Courts have imposed a sliding scale of due process that must be afforded a student who is

punished for disciplinary reasons. *See Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 701 (5th Cir.1974) ("The requirements of due process are sufficiently flexible to accommodate themselves to various persons, interests, and tribunals without reduction to a stereotype and hence to absurdity."), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975). If the punishment is not de minimis, then the due process afforded the student must be more closely scrutinized by a reviewing court for arbitrariness. *See Goss*, 419 U.S. at 576, 95 S.Ct. at 737. As the Supreme Court of the United States stated:

> The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences. The Due Process Clause will not shield him from suspensions properly imposed, but it deserves both his interest and the interest of the State if his suspension is in fact unwarranted. The concern would be mostly academic if the disciplinary process were a totally accurate, unerring process, never mistaken and never unfair. Unfortunately, that is not the case, and no one suggests that it is. Disciplinarians, although proceeding in utmost good faith, frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process.

*Id.* at 579–80, 95 S.Ct. at 739. *See also Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 155 (5th Cir.1961) ("Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved."), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961).

██ We do not hold that the alleged failure of the medical school to follow its own rules and procedures was a per se

violation of Than's due process rights. We do hold, however, that under the abuse of discretion standard we must apply to the grant of a temporary injunction, the trial court was entitled to examine the whole picture to determine whether Than presented some evidence that the medical school's cumulative violation of its rules and procedures showed his probable right of recovery on the merits of his due process claim. If Than offered some evidence that the medical school acted arbitrarily and that the administrative hearing lacked fundamental fairness, *cf. University of Houston v. Sabeti*, 676 S.W.2d 685, 689 (Tex.App.—Houston [1st Dist.] 1984, no writ) (record showed that a fair hearing was conducted that gave the appellee fair opportunity to defend himself against his accusers), the trial court did not abuse its discretion in concluding that he would prevail on the merits of his due process claim and in granting the temporary injunction. *See Regents v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985).

In the present case, the record before this Court indicates the trial court considered evidence that Than was afforded a hearing before Yvonne Russell, M.D., who is Assistant Vice–President for Student Affairs and Dean of Students for the School of Medicine at the University of Texas Medical Branch at Galveston. Dr. Russell's recommendation that Than be expelled for cheating was supported by letters from two proctors. One of the proctors, Karen Winkler, stated in her letter that Than "continually kept glancing in the direction of [the other student's] answer sheet in rather quick, furtive glances," for a period of 15 to 20 minutes. Winkler was seated in the back of the room. The other proctor, Rita Hesse, stated that she was approached by Winkler and asked to watch Than. Hesse said she stood by Than and watched him for 10 to 15 minutes, but "noticed no irregularity." When she moved to the back of the room, she watched as Mr. Than repeatedly darted glances to his front left for a period of 15 to 20 minutes. Dr. Russell also considered a letter from the NBME that compared

Than's incorrect answers with those of the student on whose paper Than was accused of looking. The hearing officer's letter to the school showed that she relied heavily on the NBME letter, which set forth admittedly inconclusive statistics about the correlation of incorrect answers on the two papers. The record also shows that Dr. Russell made an ex parte visit to the examination room and would not allow Than to accompany her. The hearing officer also considered that Than's motive to cheat might have been induced by a failing grade on his psychiatry exam, an issue that Than was unprepared to address and that was later rebutted by a letter from his psychiatry professor to Dr. Low.

Evidence adduced at the trial court's hearing on the temporary injunction shows that the hearing examiner heard certain offers of evidence that, when considered together, resulted in her recommendation that the medical school find Than guilty of academic dishonesty. This process is outlined in the examiner's letter to the medical school explaining her decision. Three of the factors considered material by the hearing officer in reaching her decision, (the letter from NBME, the ex parte visit, and the motive testimony), were found by the trial judge to have been tainted by due process deficiencies.

With respect to the dissent, we do not feel an appellate court must review each finding of the trial court, as in reviewing an appeal on the merits, in order to determine whether the judge abused her discretion. Rather, we apply the standard for reviewing the grant of a temporary injunction—whether the applicant presented some evidence to reasonably support a probable right of recovery on the merits of his claim. We hold that it was well within the trial judge's range of proper discretion to determine that Than offered some evidence that alleged violations of his due process rights under the Regent's Rules, that, taken as a whole, were sufficient to taint the decision-making process, and thus, render the hearing fundamentally unfair by substantive due process standards. Because Than met his burden of showing a probable right of recovery on the merits,

the trial court did not abuse its discretion in granting the temporary injunction.

We conclude that the evidence adduced at the hearing for the temporary injunction reasonably supports the trial court's finding of probable injury and probable right of recovery. We hold that the trial court did not abuse its discretion in granting the temporary injunction. We overrule appellant's point of error and affirm the judgment of the trial court.

## Motion for Contempt

The relief requested by Than in his emergency motion for contempt would require this Court to adjudicate the merits of his cause of action. We are unable to do so under established law, *Davis*, 571 S.W.2d at 861–62; *Moreno*, 808 S.W.2d at 211, and, therefore, deny the motion for contempt. We order, pursuant to our authority under Rule of Appellate Procedure 80(c), that mandate on the judgment of affirmance issue immediately. TEX.R.APP.P. 43(g). We urge the parties to expeditiously refer the matters addressed in Than's motion for contempt to the trial court's immediate attention.

DUNN, J., dissents.

DUNN, Justice, dissenting.

I dissent. Simply stated, the question before the trial court and this court is PROCEDURAL DUE PROCESS in the context of a hearing held by a state academic institution, i.e., the medical school of the University of Texas.

Although the majority holds that "it was well within the trial judge's range of proper discretion to determine that Than offered some evidence that ... the hearing [was] fundamentally unfair by *substantive* due process standards" (emphasis added), the fact is, the trial court said *nothing whatsoever* about substantive due process. Rather, the trial court based its ruling entirely on *procedural* due process, which should be the subject of this appeal and the foundation for deciding whether the trial

court abused its discretion. The majority, in my opinion, misses the true issue here.[1]

Before addressing the trial court's findings on the school's alleged violations of Than's procedural due process rights, I will briefly address what due process the school owed Mr. Than in the first place. Due process requires that, before a disciplinary dismissal may be effected, the student must "be given oral or written notice of the charges and evidence against him, and the opportunity to present his side of the story." *Eiland v. Wolf,* 764 S.W.2d 827, 833 (Tex.App.—Houston [1st Dist.] 1989, writ denied). *See also Dixon v. Alabama State Bd. of Education,* 294 F.2d 150, 158 (5th Cir.1961), *cert. denied,* 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961). Whenever a student faces possible expulsion, this "opportunity" must be in the form of a hearing that gives the school's authorities the chance "to hear both sides in considerable detail." *Id.* at 159. However, "[t]his is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required." *Id.* The student should be given the names of the witnesses against him and the subject of their testimony, the opportunity to present his defense to the charges and to produce oral and written evidence in his behalf, and the chance to inspect the written results and findings of the hearing. *Id.* "If these rudimentary elements of fair play are followed ... the

requirements of due process of law will have been fulfilled." *Id.*

Than received absolutely *all* of what he was entitled to under the above authorities. No more was, or should have been, required. As Justice White, writing for a majority of the United States Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975), succinctly stated:

> To impose ... even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness. Moreover, further formalizing the [ ] process and escalating its formality and adversary nature may not only make it too costly as a regular disciplinary tool but also destroy its effectiveness as part of the teaching process.

The trial court found the school violated Than's procedural due process rights by not following its own rules and regulations as follows:

1. The school failed to allow Than to cross-examine witnesses, specifically Paul R. Kelley, Ph.D., the person who wrote the letter from the NBME that was used as evidence at the hearing;

2. The school failed to give notice to Than that his academic record would be presented at the hearing, specifically, his

---

1. I believe the majority also applied the wrong standard to its inquiry into possible abuse of discretion. The majority states that "[i]f Than offered some evidence that the medical school acted arbitrarily and that the administrative hearing lacked fundamental fairness ... the trial court did not abuse its discretion in concluding that he would prevail on the merits of his due process claim and in granting the temporary injunction." The only case the majority relies upon to support this "standard of review" is *Regents v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). In *Ewing,* a *trial on the merits* was held and the trial court ruled for the Regents, finding there was no evidence that the school violated Ewing's substantive due process rights. *Id.* at 220, 106 S.Ct. at 510. The Sixth Circuit Court of Appeals reversed the trial court's judgment; however, the Supreme Court reversed the circuit court's decision. *Id.* at 220–21, 106 S.Ct. at 510–11. The Court held that the record showed the school did not act arbitrarily,

and so the trial court's findings *on the merits* were correct. *Id.* at 225, 227–28, 106 S.Ct. at 513, 514. The Court was *not* faced with deciding whether the trial court properly granted a temporary injunction and whether the trial court abused its discretion; rather, the Court reviewed the record to determine whether the school should have won *on the merits. Id.* at 225, 106 S.Ct. at 513. Here, as the majority concedes, we are not to review the merits of Than's claims; we are to decide whether the trial court abused its discretion by granting the temporary injunction. In such a case, a trial court abuses its discretion by misapplying the law to the facts or by concluding that an applicant has a probable right to recovery when such a conclusion is not reasonably supported by the evidence. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Eastern Energy, Inc. v. SBY Partnership,* 750 S.W.2d 5, 6 (Tex. App.—Houston [1st Dist.] 1988, no writ).

academic performance on a psychiatry NBME board exam;

3. The school allowed the hearing officer, Dr. Russell, to consider additional evidence after the hearing was concluded and outside the presence of Than; specifically, after concluding the hearing, the hearing officer visited the classroom where the incident of cheating occurred;

4. The proctors failed to follow the school's guidelines in not notifying Than of their concerns during the examination and removing him from the examining room.

I note for the purpose of this analysis that *the trial court based all of its findings of violations of Than's procedural due process on the failure of the academic institution to follow its own rules and regulations in connection with hearings of this type*. The majority states, however, that "[w]e do not hold that the alleged failure of the medical school to follow its own rules and procedures was a per se violation of Than's due process rights." It then states that "the trial court was entitled to examine the whole picture to determine whether Than presented some evidence that the medical school's cumulative violation of its rules and procedures showed his probable right of recovery."

I will review the individual findings of the trial court in order to present an accurate view of the "whole picture". I disagree with the majority's theory that an appellate court need not review a trial court's individual findings in order to determine whether the trial court abused its discretion. How can one judge the fitness of the whole without examining the individual parts? In my view, one cannot; the soundness of the trial court's decision should be evaluated by looking at each aspect, each facet of that decision. The majority has forsaken this more scrutinous approach, and has instead elected to take a panoramic view of the decision as a whole.

In regard to the trial court's first finding, we must determine whether cross-examination in an academic institution's hearing process is required under the Fourteenth Amendment Due Process Clause. Our court, as well as the United States

Fifth Circuit Court of Appeals, has directly spoken on this very point. *See Boykins v. Fairfield Bd. of Education*, 492 F.2d 697, 701 (5th Cir.1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975); *Dixon*, 294 F.2d at 159; *University of Houston v. Sabeti*, 676 S.W.2d 685, 688–89 (Tex.App.—Houston [1st Dist.] 1984, no writ). All of these cases support the proposition that the right of cross-examination in a hearing conducted by an academic institution is not a right that is protected under the Due Process Clause. *Boykins*, 492 F.2d at 701; *Dixon*, 294 F.2d at 159; *Sabeti*, 676 S.W.2d at 688–89.

Nevertheless, Than was afforded the opportunity to cross-examine all of the witnesses produced by the school at the disciplinary hearing, and in fact exercised his right to cross-examine all of those witnesses. Apparently, the trial court found that the failure of the school to produce the witness who wrote the letter from NBME, i.e., Kelley, for Than to cross-examine is what violated his due process rights under the Fourteenth Amendment. There is no rule of law or procedure that compels one party to produce a witness solely for the purpose of cross-examination by the opposing party. There is nothing in the record that indicates that there was even a request from Than for the school to produce Kelley as a witness at the hearing. There is nothing in the record that indicates that Than requested the opportunity, or ever intended, to cross-examine Kelley. At most, Than had the right to cross-examine the adverse witnesses that appeared at the hearing. *Boykins*, 492 F.2d at 702. He was indisputably afforded this right. I would hold that the right to cross-examination under these facts does not rise to the level of a due process right, and that even if it does, Than was clearly afforded this right.

The trial court also found that the school's failure to give Than notice that his academic record would be presented at the hearing was a violation of his due process rights. The question presented is whether failure to notify a student, involved in a hearing conducted by an academic institu-

tion, of the evidence to be presented against him rises to the level of a violation of his due process rights.

It is not necessary to engage in an analysis of whether this specifically violates the Due Process Clause, because the record before this Court demonstrates that Than *did* receive notice that his whole academic record would be involved in the hearing. More specifically, the following paragraph was contained in a letter from Dr. Margaret McNeese to Than:

As Associate Dean For Student Affairs, Dr. McNeese may also testify about any other aspects of the medical school or *of Mr. Than's student record* that are requested by the hearing officer.

(Emphasis added.) In addition, the following occurred at the injunction hearing:

Defense counsel: As of April 11th you had full notice of the evidence that would be presented against you, didn't you?

Mr. Than: Yes.

The trial court's conclusion that Than did not receive notice that his academic record would be presented at the hearing is not reasonably supported by the evidence and does not present a violation of his due process rights.

I now consider the next finding by the trial court, that the medical school "deviated from its own rules and regulations of minimal guarantees of due process as expressed in the Regent's Rules" when the hearing officer was allowed to visit the exam room after the hearing was concluded and outside of Than's presence. Before beginning my analysis, I note that the majority characterizes this visit as "ex parte." "Ex parte" means an act which is done "without notice to, or contestation by, any person adversely interested." *Black's Law Dictionary* 517 (5th ed. 1979). The record indicates, as will be shown below, that Than had notice of the impending visit and that, far from contesting the visit, *he actually asked to come along.* While he also testified that he was not allowed to go along, no other person accompanied the hearing officer, either.

The record demonstrates that at the conclusion of the hearing, the following occurred in front of Than:

Dr. Russell: All right. I believe that concludes the hearing.

Dr. McNeese: Do you want to look at this examination room or not?

Dr. Russell: Yes, I do.

At this point, Than made no objection to the visit.

In his testimony before the trial court, Than stated the following:

Defense Counsel: Now, regarding the hearing itself, you complain that Dr. Russell's visit to the test room was improper, isn't that right?

Mr. Than: Yes.

Defense Counsel: That's because you weren't there, isn't that right?

Mr. Than: Yes.

Defense Counsel: But isn't it true that you knew she was going to the test site?

Mr. Than: I also did ask her, too, I asked her after the record have been finished. She's walking out, I asked Dr. Russell can I come along and she say no, plain no. She told me she know where the room was. That was off the record.

Defense Counsel: Did you ask her why?

Mr. Than: No, because I didn't think it's appropriate to be a pest with the judge or the hearing officer.

In the record before this court is exhibit number five, which was introduced into evidence during the school's hearing through the testimony of Rita Hesse, one of the proctors. This exhibit is a diagram of the room visited by the hearing officer. In her testimony, Hesse marked on the exhibit exactly where Than sat, where Ted Chiang sat, where the proctors stood, and where she stood to determine where Than was looking. She also marked on the exhibit where the students testifying in Than's behalf sat. The diagram showed the configuration of the room and exactly how the chairs were arranged. Than did not question the authenticity or accuracy of the diagram. Other than to physically stand in the room where the event in question occurred, there was nothing left for the hearing officer to experience that had

not already been demonstrated to her during the hearing. Than did not direct this Court or the trial court to any evidence considered by Russell that had not already been placed into evidence during the hearing, which took place *before* Russell entered the room. Nor does Than point to some conclusion Russell reached that she could not have reached from considering the diagram already put in evidence at the hearing, which occurred, again, before she entered the room.

Than asserts that Russell's refusal to allow him to go into the room with her denied him the opportunity to provide relevant factual evidence and address any mistaken conclusions drawn from Russell's visit. I disagree. Than points to no evidence that he would have provided to Russell, nor does he state in what way he would have addressed any mistaken conclusions Russell allegedly drew from being inside the room. What Russell saw in the room was simply cumulative of the diagram that had been introduced into evidence at the hearing. The proctors had testified that they could see Chiang's paper when standing directly behind Than. They had drawn on the diagram where Than and Chiang sat in the room. Than did not question this testimony or the accuracy of the diagram. Russell did no more than sit in the seat designated by the diagram as the one in which Than sat on the day of the incident. She observed only what had been testified to earlier, i.e., that from where Than was sitting, he could see Chiang's paper. Neither the trial court nor Than showed how Russell's trip to the room without Than violated his due process rights. At best, this allegation involves so many speculative aspects that it is impossible to give credence to it. Regarding notice, Than knew that the room where the cheating occurred would be part of the evidence in this case, as demonstrated by this record. Under the facts in this record, I would hold that these allegations do not rise to the level of a violation of Than's due process rights.

I will now address the final alleged procedural due process violation found by the trial court. The court found that the proctors' failure to follow the school's rules and guidelines in not notifying Than of their concerns during the examination violated Than's constitutional due process rights. An institution's violations of its own rules that do not rise to the level of due process do not constitute a violation of the Fourteenth Amendment. *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir.1985), *cert. denied*, 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985). Whether Than was entitled to something more by virtue of the University's own rules is a matter of state law, *not* constitutional law. *Id.* Than does not deny that he had notice of the hearing. His only claim is that the proctors did not tap him on the shoulder during the exam as set out in the school's regulations. This may have violated the school's rules, but it was nonetheless not a violation of Than's due process rights.

I do not find that Than's constitutional procedural due process rights were violated, and therefore I find no probable right of recovery because of the alleged violations. What would be "recovered" here is a new hearing, wherein Than is afforded due process. Because I would find that his due process rights were not violated in the first place, I would find that he has no probable right of recovery here, since in my view, he has already been afforded what he now seeks to "recover."

The majority writes in terms of "the whole picture," the school's "cumulative violation of its rules," and of "violations ... taken as a whole." Yet, because I find no individual violations of due process, I can find no "cumulative" violation, either.

Although the trial court did not grant the temporary injunction based upon the school's alleged violation of Than's substantive due process rights, the majority insists on addressing the issue of whether Than's substantive due process rights were violated, and supports its opinion on that basis. The trial court did not state in its findings that Than's substantive due process rights were violated. However, because the majority raises the issue of substantive due process, I will address the substantive due process issues based on

the limited amount of evidence in this record.

We have before this Court a full transcript of the hearing held by the school. Inasmuch as the majority does not fully set out the facts that support the hearing officer's decision, the following is a statement of the facts as they appear in the record:

Than was in his third year of medical school. He took a national board exam in surgery on February 22, 1991. During this exam, the proctors, Rita Hesse and Karen Winkler, personally and immediately reported the "irregular activities" of Allan Than that took place during the NBME exam to the Dean of Student Affairs. They then confirmed their conversation with the Dean of Student of Affairs by letter. Notice was given to Than, and he was sent all documents to be used in the coming hearing and advised as to the testimony of the witnesses which the school intended to call. Than was also informed that he would be allowed to cross-examine these witnesses. Than admitted in his testimony before the trial court that he had notice.

At the hearing, Karen Winkler testified that about 15 minutes into the exam she noticed that "Than was looking in the direction of the answer sheet of the student in front of him," i.e., Ted Chiang. She watched him for 15–20 minutes and he kept glancing in the direction of Chiang's answer sheet in rather quick, furtive glances. She contacted Rita Hesse, the other proctor in the room, and asked her to observe Than. She stated that Rita moved to a position which was directly beside Than and nothing happened for about 30 minutes. Rita then moved to the back of the room, whereupon Than resumed glancing at Chiang's answer sheet. During this procedure, Dr. Polk, another proctor, had left the room and he was not told of the problem. Rita and Karen talked it over and felt that Than was cheating, so Karen went to the Office of Student Affairs and spoke to Dr. McNeese to find out how to handle the

matter. She was told to pull Than out of the room. After leaving Dr. McNeese' office, she went back to the exam room and discussed with Rita for about five to ten minutes how they were to accomplish this when Chiang picked up his paper, handed in his test, and left the room. From that moment on, Than did not once look up from his exam. Because of this, they did not pull him from the room.

Rita Hesse, the other proctor, stated that 30–40 minutes into the test, Karen said she had noticed irregular behavior by one of the students. She went to where Than was seated and waited 11–15 minutes, and nothing happened. She motioned to Karen that she didn't see anything. They decided to continue to watch, not by his side, but from the back of the room. She stated "I watched in disbelief for approximately 15 to 20 minutes as Mr. Than repeatedly darted glances to his front left." She stated that the looks were deliberate and consistent. She moved to the front of the room and stood in front of Than and determined that he was looking at Chiang's answer sheet. She stated that because Than's seat was misaligned with the other seats, he could see the answers of the student in front of him, Mr. Chiang, as well as those of the student to the left of him. She stated that Than stopped looking (1) when Chiang turned his answer sheet to the other side; (2) when she stood near him; and (3) when Chiang got up to go to the restroom. She also stated that Than never raised his head again once Chiang turned in his paper and left.[2]

Dr. McNeese then wrote to the NBME and requested an evaluation of Than's test compared to that of Ted Chiang. She received the answer on March 11 and attempted to contact Than. She finally located him on March 12, and met with him immediately and fully discussed the charges. She again met with Than on March 18 about the matter. On April 4, she wrote Than a letter formally advising him of "academic misconduct by you in

---

**2.** Considering these facts, the majority obviously puts it lightly when it states that "[d]uring the exam, two of the proctors *suspected* that Than was glancing at another student's answer sheet" (emphasis added).

violation of section 3.22 of Chapter VI, Part One of the Rules and Regulations of the University of Texas ("Rules") (enclosed)."

The above facts are the backdrop against which the majority has determined that Than's substantive due process rights were violated. The majority states that it does not hold that the alleged failure of the medical school to follow its own rules and regulation is a per se violation of Than's due process rights. Yet, again, this is the only basis on which the trial court supported its findings.

In my view, the trial court abused its discretion by concluding that Than has a probable right of recovery when that conclusion is not reasonably supported by the evidence. I also believe the trial court abused its discretion by misapplying the law to the facts.

A correct determination in this case, reached by applying the proper standard of review to the proper issue, would have the effect of furthering the following policy: The judiciary should not impose rules and standards that perfectly befit the proceedings in our trial courts on institutions such as medical schools in the name of due process, be it procedural *or* substantive, when due process has not been offended. I find support for this reasoning in *Boykins*, where Judge Gee, writing for the majority, wrote in relevant part as follows:

> Appellants principally complain that much of the evidence upon which the expulsions were based consisted of what was technically hearsay ... [Appellants contend that they should be afforded] confrontation and cross-examination of witnesses, especially where severe punishments are meted out on disputed facts. We decline to do so ... [Under appellants' argument] we stand but a step away from the application of the *strictissimi juris* due process requirements of criminal trials ... Important as they are, the rights at stake in a school disciplinary hearing may be fairly determined upon "hearsay" evidence ... We decline to place upon a board of laymen

> the duty of observing and applying the common-law rules of evidence.

*Boykins*, 492 F.2d at 700–701.

The majority has focused on the NBME letter, the so-called "ex parte" visit, and the motive testimony to justify its decision. In other words, the majority has upheld the injunction based on the issues of the right to cross-examination, a factfinder's "misconduct," and pretrial discovery. However, the same standards and rules which govern those issues in the courtroom world should not apply in the academic world. We should not stand behind a policy that makes our educational institutions, in effect, part-time mini-courts. Judge Gee wrote:

> There is a seductive quality to the argument—advanced here to justify the importation of technical rules of evidence into administrative hearings conducted by laymen—that, since ... education is a thing of great value, comparable to that of welfare sustenance or the curtailed liberty of a parolee, the safeguards applicable to these should apply to it.

*Id.* at 701. The majority, in my view, has heard the siren song of this seductive argument and come to the wrong decision. It has hung the yoke of formal courtroom-style procedures around the neck of an educational institution.

I find that Than was afforded all the due process to which he was entitled under the Fourteenth Amendment of the United States Constitution, and I would dissolve the temporary injunction entered by the trial court.