**Roy E. HENDERSON, Appellant,**

v.

**KRTS, INC., Appellee.**

**No. 01–91–00571–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 16, 1992.

Bradley L. Deluca, Aubrey B. Calvin, C. Michael Clark, Houston, for appellant.

Thomas T. Hutcheson, Steven C. Meisgeier, Douglas S. Griffith, Houston, for appellee.

Before TREVATHAN, C.J., and O'CONNOR and COHEN, JJ.

## OPINION

O'CONNOR, Justice.

We are asked to decide if an agreement executed by the parties could be the grounds for issuing a temporary injunction. KRTS, Inc. (KRTS) filed suit against Roy E. Henderson to enjoin him from interfering with KRTS's move of its radio transmitter to Alvin, Texas, from its present location at Seabrook, Texas. After a hearing, the trial court enjoined Henderson, and he appeals.[1] We affirm.

There are four agreements involved in this dispute, the asset purchase agreement, the upgrade agreement, the amended upgrade agreement, and the assistance and non-competition agreement.

### The asset purchase agreement

In March or April 1987 (the parties disagree on the month), Henderson and KRTS executed an asset purchase agreement for the sale of Henderson's radio station and its assets to KRTS. The purchase price for the station was $2,250,000. The asset purchase agreement was not included in the record on appeal.

### The upgrade agreement

In July 1987, KRTS and Henderson executed the upgrade agreement by which KRTS agreed to pay Henderson an additional $4 million if the radio station was "upgraded" from a class A to a class C-2

station before July 1, 1990. "Upgrade" was defined to include the happening of three events:

1. When the Federal Communication Commission (FCC) granted KRTS a Class C-2 construction permit for a transmitter site located within five miles of Alvin, Texas;

2. When the construction permit became a final order of the FCC, not subject to further review; and

3. When the construction of the facilities were completed.

### The amendment to the upgrade agreement

On August 22, 1988, KRTS and Henderson executed an amendment to the upgrade agreement. The terms of the agreement that are relevant to this case are:

1. Instead of a contingent payment of $4 million to Henderson, KRTS paid him $2,675,000 in cash and notes.

2. In consideration for the payment of $2,675,000, Henderson executed the assistance and non-competition agreement.

3. When the FCC report and order became final, the upgrade agreement would terminate, "except as hereinafter provided."

4. If the report and order were not final by September 20, 1988, the maturity dates for the notes would be extended.

5. If the report and order did not become final within one year, or if they became final but were later withdrawn, the upgrade agreement would be deemed in full force and effect.

"Report" and "order" are terms that are not defined in the upgrade agreement. The upgrade agreement adopts the definition for those terms from the asset purchase agreement, which, as stated earlier, was not included in the record.

---

1. This interlocutory order is appealable under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(4) (Vernon Supp.1992).

### The assistance agreement

As part of the amended upgrade agreement, Henderson executed an assistance and non-competition agreement (assistance agreement) with KRTS.[2] The terms of the agreement that are relevant to this appeal are:

1. Henderson would use his best efforts to assist the station in its upgrade and relocation.

2. Henderson would be paid $125 per hour for providing his reasonable best efforts to assist KRTS.

3. Henderson agreed that KRTS's remedy at law would be inadequate; if Henderson breached the agreement KRTS could seek temporary or permanent injunctive relief in any action to enforce the agreement.

### The hearing on the TRO

Mike Stude, president of KRTS, testified at the injunction hearing on May 30, 1991, that the FCC had not approved and issued the final order for the move to Alvin.[3] Stude testified that the application for the Alvin location—selected with Henderson's help—was blocked by transmission from another station, the Rice University Radio, which operated on a similar frequency. With Henderson's help, KRTS negotiated with Rice University and paid for the move of its transmission tower to a location north of Houston. The cutoff date to object to the Rice move was July 25, 1990. No one objected, and in September of 1990, KRTS filed an application to move to Alvin. During the time KRTS was waiting for the FCC to approve the Rice move, KRTS filed an application for an interim move to Texas City.

Stude testified he first learned Henderson was interfering with KRTS's application for the move to Alvin in October of 1990, two months after he made the final payment to Henderson. Stude learned that Henderson had applied for a license to operate a radio station on the same frequency as KRTS at New Ulm, Texas. KRTS's lawyer sent Henderson a letter demanding he withdraw the application, and he withdrew it. In December 1990, Henderson filed another application for a station with the same frequency as KRTS, this time in Somerville, Texas. Again, KRTS's lawyer wrote him, this time with no effect. Next, Stude learned that Henderson filed an objection with the FCC to KRTS's application for the Alvin permit. KRTS filed a reply to Henderson's objection with the FCC, to which Henderson filed another objection. Finally, KRTS filed this lawsuit and asked the court for a temporary injunction. In response, Henderson removed the case to federal court, and after a hearing, the case was promptly remanded to state court. While the case was somewhere in the process of removal or remand, Henderson filed another objection to the Alvin permit with the FCC.

Stude testified that the objections filed by Henderson could delay the permit process by as much as six months to two years. Stude testified that the amended upgrade agreement is still a viable document, and only one paragraph of the agreement has terminated. Stude testified that the agreement is still viable because the station has not yet moved to Alvin.

KRTS presented an expert who testified that the site in Alvin would result in a larger audience than the Texas City site by over a million, which will have a dramatic effect on the profitability of the station. The move would give KRTS the opportunity to serve a much larger audience and thus significantly increase revenue and profits.

Henderson testified that he understood the purpose of the amended upgrade agreement was to discount the $4 million price of the upgrade to $2,675,000 and terminate

---

2. By the terms of the agreement, the non-competition provision had expired and is not an issue here.

3. In his brief, Henderson asserts that the FCC issued the order to permit KRTS to move on May 16, 1991. At oral argument, KRTS confirmed that the FCC issued the order but stated that the order is not a final order; Henderson refused to confirm or deny whether the FCC order was final.

the agreement when the FCC's report and order for C–2 upgrade in *Seabrook*, not in Alvin, became final. Henderson testified that the C–2 report and order became final in April 1989. Henderson disputed that his application for a permit in Somerville would interfere with the Alvin location.

The trial court granted KRTS a temporary injunction on May 31, 1991, which specifically ordered Henderson to refrain from filing any FCC license application, objection, or other document that would delay or block the contemplated move of KRTS to Alvin. The court further ordered Henderson to withdraw all FCC applications, objections, or other documents that blocked the planned move.

On appeal, Henderson claims the FCC report and order relating to the amended upgrade agreement were final on April 10, 1989, because he was paid and he considered the agreement terminated. Thus, he felt he was free to contest KRTS's application for the Alvin location.

### Trial court standard of review

To be entitled to the issuance of a temporary injunction, an applicant must plead a cause of action AND show a probable right of recovery and a probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *Miller v. K and M Partnership*, 770 S.W.2d 84, 87 (Tex.App.—Houston [1st Dist.] 1989, no writ). Probable injury includes the elements of imminent harm, irreparable injury, and no adequate remedy at law for damages. *Surko Enter. Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston [1st Dist.] 1989, no writ). For a legal remedy to be adequate, it must give the plaintiff complete, final, and equal relief. *Miller*, 770 S.W.2d at 87. At the hearing for a temporary injunction, the only question before the trial court is whether the applicant was entitled to an order to preserve the status quo pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Martin v. Linen Sys. for Hosp., Inc.*, 671 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1984, no writ). The status quo is defined as the last, actual, peaceable, non-contested status that preceded the controversy. *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975).

An order granting a temporary injunction should not adjudicate the issues. *Matlock v. Data Processing Security, Inc.*, 607 S.W.2d 946, 951 (Tex.App.—Fort Worth 1980), *aff'd*, 618 S.W.2d 327 (Tex.1981). Rule 683 of the Texas Rules of Civil Procedure requires the trial court to state the reasons why the court deems it proper to issue the writ to prevent injury to the applicant, including any reasons why the court believes the applicant's probable rights will be endangered if the writ is not issued. *Transport Co. of Texas v. Robertson Transp., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953); *Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 210 (Tex.App.—Houston [1st Dist.] 1991) (orig. proceeding).

### Appellate court review

Our review of the temporary injunction is limited to deciding whether the trial court clearly abused its discretion in granting the order; we are not to resolve the merits of the underlying case. *Davis*, 571 S.W.2d at 861–62; *Moreno*, 808 S.W.2d at 211. If the parties presented conflicting evidence at the hearing, we will not find the trial court abused its discretion in entering its order. *Davis*, 571 S.W.2d at 862. We will not substitute our judgment for that of the trial court, but will limit our review to whether the court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.; Moreno*, 808 S.W.2d at 211. The trial court abuses its discretion when it misapplies the law to established facts or when it concludes the applicant has a probable right of recovery and the conclusion is not reasonably supported by the evidence. *Southwestern Bell Tel. Co.*, 526 S.W.2d at 528; *Miller*, 770 S.W.2d at 87.

### 1. Preservation of the status quo

In point of error one, Henderson contends the trial court's order did not maintain the status quo, but instead, decided the merits of the case. Henderson con-

tends the trial court should have preserved the status quo as of April 10, 1989, when he contends he satisfied all his obligations under the assistance agreement and it had expired; KRTS contends the assistance agreement did not expire on April 10, and the status quo is some date before Henderson filed the application for the New Ulm permit and his objections to the Alvin permit. We look to the record to find the last, actual, peaceable, and noncontested status that preceded the controversy. To find the last, peaceable time before any contested issue arose, we go to September 1990, after KRTS had filed its application for the Alvin permit, but before Henderson had filed his application for the permit in New Ulm and the document contesting KRTS's application for the Alvin permit. By the evidence presented at the hearing, that interim was the last period when there was peace between the parties.

We find the status quo in this case was in September of 1990, when KRTS was pursuing its move to Alvin, free of any impediments by Henderson. We hold that the trial court did not abuse its discretion in its order by enjoining Henderson from further interference with KRTS's application for the Alvin location.

On this issue, we overrule point of error one.

### 2. Determination of the merits

■ As part of point of error one, Henderson complains that the trial court's order granting the injunction resolved the underlying factual disputes. In point of error two, Henderson contends he was denied his right to trial by jury because the trial court adjudicated the merits of the case. We consider these two points together. In effect, Henderson complains that the trial court resolved too much of the dispute in the order. The trial court's order states in part:

After considering all of the evidence received and the argument of counsel, the Court finds and concludes the Plaintiff KRTS will probably prevail on the merits at the trial of this case; that Henderson has contractually agreed with KRTS to

use his reasonable best efforts to assist KRTS in obtaining permission and approval from the Federal Communications Commission ("F.C.C.") to move its transmitter to Alvin, Texas; that Henderson has harassed KRTS and violated the fiduciary and other legal and contractual duties he owes to KRTS by filing applications for competing radio stations with the F.C.C. and by filing informal objections and other documents with the F.C.C. for the apparent purpose of defeating and/or delaying KRTS' planned move of its transmitter to the Alvin, Texas site.

The underlined portions of the order are the parts to which Henderson objects.

In *Moreno*, the appellant complained of the opposite problem as the one here, that the trial court put too little information in the order. 808 S.W.2d at 210. We reversed the injunction in *Moreno* because the trial court did not expressly state the reasons for the injunction. *Id.* at 211. Here, Henderson complains that the order adjudicates the underlying suit, and does not contain the, qualifying language generally used in injunctions.

We agree with Henderson that the trial court's order seems to resolve the underlying dispute. We do not believe the trial court meant to resolve these issues or that the order in any way impedes a full trial of all issues on the merits. We note that the trial court used the qualifying phrase "probably prevail" before the first colon, and all the court's findings, even those beyond the colon, should have been qualified by it. We reform the trial court's judgment to add the additional qualifying language as underlined below:

After considering all of the evidence received and the argument of counsel, the Court finds and concludes Plaintiff KRTS will probably prevail on the merits at the trial of this case; that Henderson has contractually agreed with KRTS to use his reasonable best efforts to assist KRTS in obtaining permission and approval from the Federal Communications Commission ("F.C.C.") to move its transmitter to Alvin, Texas; that *the Plaintiff*

*KRTS will probably prevail at trial when it attempts to prove that* Henderson has harassed KRTS and violated the fiduciary and other legal and contractual duties he owes to KRTS by filing applications for competing radio stations with the F.C.C. and by filing informal objections and other documents with the F.C.C. for the apparent purpose of defeating and/or delaying KRTS' planned move of its transmitter to the Alvin, Texas site.

We overrule point of error two and point of error one. We reform the injunction to comply with Tex.R.Civ.P. 683.

### 3. Restraint of constitutional rights

In point of error three, Henderson contends the order improperly enjoined him from his constitutional rights to freedom of speech under the United States Constitution, amendment I and the Texas Constitution article I, § 8. Henderson objects to the restraint imposed by the judgment:

IT IS, THEREFORE, ORDERED that Roy Henderson, Defendant in this cause, and all others acting in concert with Defendant who receive notice of this Order, are hereby commanded forthwith to cease, desist and refrain from directly or indirectly filing or applying for any F.C.C. license, or filing any objection, comments or other documents with the F.C.C. that in any way would interfere with, delay, block or otherwise hinder KRTS' contemplated move of its transmitter to Alvin, Texas. This order shall remain in effect from this day forward until the date that final judgment is signed in this case, or until further order of this Court.

IT IS FURTHER ORDERED that Henderson shall forthwith withdraw all applications, objections, comments, complaints or other documents that he has heretofore filed with the F.C.C. that in any way might adversely affect KRTS' planned move of its transmitter to the Alvin, Texas site.

Henderson's conduct consisted of filing written objections with the FCC to block KRTS's relocation of the transmitter to Alvin. By terms of his contract, Henderson agreed to *assist* KRTS to relocate to Alvin. If the contract was still in effect when Henderson filed his objections to KRTS's move to Alvin, a jury could find that Henderson's actions breached the contract; if the contract was not in effect and Henderson had no continuing obligation under it, a jury might not find that Henderson's actions breached the contract.

Both Henderson and KRTS rely on *French v. Community Broadcasting of Coastal Bend, Inc.,* 766 S.W.2d 330 (Tex. App.—Corpus Christi 1989, writ dism'd w.o.j.). In *French,* Community Broadcasting (CBCB), sought to restrain a former employee, French, from taking any further action on an application French had filed with the FCC for a channel that would operate on CBCB's channel. As an employee, French had executed a covenant not to compete. After the injunction hearing, the trial court found that the covenant not to compete was valid. Here, KRTS is not attempting to enforce a covenant not to compete, merely the agreement to assist. In *French,* the court ordered French to do two things: (1) sign a document stating that he had no objection to CBCB's license renewal, and (2) not to communicate with the FCC about CBCB's permit. *French,* 766 S.W.2d at 335.

On review, the court of appeals found the trial court prohibited activities that were only marginally covered by the covenant not to compete. In modifying the order, the court of appeals held that the trial court erred in enjoining French from filing documents with the FCC that related to CBCB's license. *French,* 766 S.W.2d at 336. The court noted that the covenant not to compete required French to refrain from competing with CBCB; it did not prevent him from voicing an opinion regarding CBCB's license. *Id.*

That is the critical distinction here: KRTS is not attempting to enforce a covenant not to compete, as was CBCB in *French;* KRTS is attempting to enforce Henderson's agreement to assist it in obtaining a permit to locate in Alvin. In that sense, because Henderson by contract

agreed to assist KRTS obtain its permit, the injunction here is more limited than the order in *French.*

We overrule point of error three.

**4. Adequate remedy at law**

■ In point of error four, Henderson contends issuance of the temporary injunction was improper because KRTS had an adequate remedy at law in a suit for damages.

In the assistance and non-competition agreement, the parties agreed that KRTS's:

remedy at law for any breach of this Agreement would be inadequate and [Henderson] agrees and consents that temporary or permanent injunctive relief may be granted ... without necessity of proof of actual damage.

We hold that Henderson, by agreement, stipulated that KRTS could seek injunctive relief without the necessity of proof of actual damages.

We overrule point of error four.