TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00032-CV






Barbara Lund and Westlake Assisted Living, L.L.C., Appellants



v.



Dennis Leibl and Annette Leibl, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 98-08266, HONORABLE PAUL DAVIS, JUDGE PRESIDING 







 Appellants Barbara Lund and Westlake Assisted Living, L.L.C. (1) appeal from the
trial court's grant of a temporary injunction halting all construction on WAL and prohibiting the
use of the property as an assisted-living center. Appellants assert in six issues presented that: (1)
the injunction violates the Fair Housing Amendments Act of 1988 ("FHAA"); (2) (2) the injunction
prohibiting all construction on the property is impermissibly broad; (3) the injunction prohibiting
any assisted-living center on the property is impermissibly broad; (4) the trial court erroneously
shifted the burden of proof to appellants; (5) there is no evidence that the facility violates deed
restrictions regarding appearance; and (6) the findings of fact are not supported by the evidence. 
We will affirm the order of the trial court.


BACKGROUND

 Appellees Dennis and Annette Leibl and appellant Lund own two of the three lots
in a subdivision outside the Austin city limits known as Bishop's Bend (the "Subdivision"). The
use of property within the Subdivision is limited by several deed restrictions recorded in 1992. 
These deed restrictions provide, in relevant part:


2.15 Compliance with the Restrictions. Each Owner shall comply strictly with the
provisions of the Restrictions as the same may be amended from time to time. 
Failure to comply with any of the Restrictions shall constitute a violation of this
Declaration, and shall give rise to a cause of action to recover sums due for
damages or injunctive relief or both. 

. . . . 

3.01 Residential Use. All Lots shall be improved and used solely for single family
residential use, inclusive of a garage, fencing and such other Improvements as are
necessary or customarily incident to residential use. Nothing in this Declaration
is intended to prohibit servants or non-nuclear family members from occupying the
Lot either on a temporary or permanent basis.

. . . . 

5.02 Amendment. . . . [T]his Declaration may be amended by unanimous written
agreement of all Owners of the Lots within the Property. No amendment shall be
effective until it has been recorded in the Real Property Records of Travis County,
Texas.



(Emphasis added.) In addition, the deed restrictions stipulate that all homes in the Subdivision
must comply with various building requirements, including dwelling size, masonry requirements,
roofing materials, driveway, and landscaping requirements. The Leibls constructed a single-family home on their lot, where they currently reside. Lund, however, began construction on her
lot of a multi-family assisted-living facility intended to provide long-term care for up to fifteen
elderly persons.

 On July 29, 1998, the Leibls filed a lawsuit against Lund and WAL seeking
temporary and permanent injunctions prohibiting the construction and operation of WAL on the
Lund lot, and a declaration that the deed restrictions were valid. Lund responded by filing a
lawsuit in federal court, alleging that the Leibls' lawsuit seeking injunctive and declaratory relief
illegally discriminated against the elderly, and thereby violated the FHAA. Lund also filed a
general denial to the Leibls' petition in the state court action.

 On December 15-16, 1998, the state trial court held an evidentiary hearing on the
Leibls' request for a temporary injunction. At the evidentiary hearing, Lund testified that she had
owned and managed several residential properties in the Austin area, and that she reviewed the
deed restrictions before purchasing the property and was aware of their meaning. She also
testified that she never consulted an attorney to determine the nature of the limitations placed by
the single-family use restriction on her intent to build an assisted-living center. Lund never spoke
to the Leibls about her intentions, (3) and did not seek an amendment to the deed restrictions. She
began construction on the facility while the Leibls were out of town; therefore, the facility was
substantially completed by the time the Leibls became aware of Lund's intentions and were able
to file their application for injunction.

 During the evidentiary hearing, Lund characterized the proposed residents as
"elderly" and "not quite ready for a nursing home." She stated that her mother would likely be
a resident, and that one of the reasons for selecting the property in the Subdivision was its
proximity to her present home. Lund commented that, although her mother suffered from high
blood pressure and did not see well, she still drove. Lund further testified that, although she did
not have any formal training in long-term care for the elderly, she had done some preparatory
research and had applied for a license from the State to operate WAL as a personal-care facility.

 The Leibls offered expert testimony that WAL would negatively affect property
values in the Subdivision and surrounding residential area. The Leibls' expert testified that after
reviewing the relevant deed restrictions and Lund's site plan and as-built survey, he found WAL's
construction to be incompatible with the deed restrictions in both use and appearance. As to
appearance, the expert specifically found the 166-foot expanse visible from the Leibls' property
to be inconsistent with surrounding properties. (4) After hearing the evidence, the trial court decided
to grant the temporary injunction.

 On January 11, 1999, the trial court held another hearing to determine the nature
of the remedy to be provided. Lund argued that the FHAA "trumped" the single-family use deed
restriction, and that the issuance of any injunction was therefore improper. The trial court asked
for specific evidence that the proposed residents were handicapped. Lund offered evidence that
the residents would be elderly and would require the type of care associated with advanced age,
but offered no evidence that the residents were otherwise handicapped. Lund also offered, in the
alternative, to move into the facility and utilize it as her personal residence. She argued that
because the facility's construction was 80% complete, the trial court should allow her to complete
construction. After this second hearing, the trial court signed the temporary injunction, which
provides in relevant part:


The Defendant's failure to honor the applicable and valid Deed Restrictions has
been ongoing since at least June, 1997 and will not cease without an order of this
Court. It is therefore,


ORDERED, ADJUDGED and DECREED that Barbara Lund and Westlake
Assisted Living, L.L.C. are enjoined from interfering with the Leibls' rights under
the Deed Restrictions applicable to the Bishop's Bend Subdivision, Travis County,
Texas; and it is further


ORDERED, ADJUDGED and DECREED that Barbara Lund and Westlake
Assisted Living, L.L.C. are hereby enjoined from continuing construction of the
Westlake Assisted Living Facility at 4100 Westlake Drive, Travis County, Texas;
and it is further 


ORDERED, ADJUDGED and DECREED that Barbara Lund and Westlake
Assisted Living, L.L.C. are hereby enjoined from beginning operations or
conducting operations of the Westlake Assisted Living Facility at 4100 Westlake
Drive, Travis County, Texas . . . 



(Emphasis added.) Appellants bring this interlocutory appeal from the grant of the temporary
injunction.


DISCUSSION

Standard of Review

 At a hearing upon the request for a temporary injunction, the only question before
the trial court is whether the applicant is entitled to preservation of the status quo of the subject
matter of the suit pending a trial on the merits. Davis v. Huey, 571 S.W.2d 859, 861-62 (Tex.
1978). In an appeal from an order granting or denying a request for a temporary injunction,
appellate review is confined to the validity of the order that grants or denies the injunctive relief. 
This Court may not consider the merits of the lawsuit. See Davis, 571 S.W.2d at 861-62; Public
Util. Comm'n v. Coalition of Cities for Affordable Util. Rates, 776 S.W.2d 224, 226 (Tex.
App.--Austin 1987, no writ). Proof that the applicant ultimately will prevail at trial is not
required. See State v. Southwestern Bell Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975). This Court
may reverse the trial court's order only on a showing of a clear abuse of discretion. See Transport
Co. v. Robertson Transp., Inc., 261 S.W.2d 549, 552 (Tex. 1953).


The Deed Restriction

 This case involves a clear violation of the single-family use deed restriction. The
Leibls met their burden of introducing evidence of the existence of the deed restriction, and of the
substantial violation of that restriction. Lund admitted to knowledge of the single-family use deed
restriction before purchase of the property, and does not dispute the validity of the restriction on
appeal. Lund also testified to her intent to finish construction and begin operation of an assisted-living facility housing at least fifteen residents unless restrained by the court. Additionally,
although it was not necessary to demonstrate substantial injury, (5) the Leibls introduced evidence
of the negative effect WAL would have on their property value. Thus, a prima facie case was
established by the Leibls justifying the issuance of the temporary injunction to maintain the status
quo pending a trial on the merits. This does not, however, end our inquiry. Lund seeks to answer
this prima facie case by asserting various defenses. Lund's issues reduce to three core challenges: 
(1) the injunction violates the FHAA; (2) the injunction is impermissibly broad; and (3) the trial
court's findings are not supported by the evidence. We will begin our discussion with Lund's
charge that the injunction violates the FHAA, and in so doing will also resolve her fourth issue
regarding the burden of proof.


The Injunction and the FHAA

 Lund's first issue asserts that the temporary injunction is void because it violates
the FHAA. The FHAA prohibits discriminatory housing practices against the handicapped. See
City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 728 (1995). (6) Lund argues that the
FHAA's definition of "handicapped" encompasses the elderly. Under the FHAA, "'[h]andicap'
means, with respect to a person--a physical or mental impairment which substantially limits one
or more of such person's major life activities." 42 U.S.C.A. § 3602(h)(1) (1994). Lund
concludes that because the prospective residents of WAL will allegedly require assistance in
eating, walking, bathing, and other age-related infirmities, these residents have a "physical or
mental impairment that substantially limits their major life activities." To resolve this issue, we
must first analyze the burden of proof in this dispute.

 In a restrictive covenant case, proof of actual damages and irreparable injury are
not required in order to obtain injunctive relief. Shepler v. Falk, 398 S.W.2d 151, 154 (Tex. Civ.
App.--Austin 1965, writ ref'd n.r.e.). In such cases, a court will order injunctive relief if a
distinct or substantial breach of the restrictions is shown. Protestant Episcopal Church Council
v. McKinney, 339 S.W.2d 400, 403 (Tex. Civ. App.--Eastland 1960, writ ref'd). When a
substantial and material breach is shown, it is not necessary to demonstrate substantial injury or
the extent of actual monetary damages in order to enforce the restriction by injunction. See WLR,
Inc. v. Borders, 690 S.W.2d 663, 668 (Tex. App.--Waco 1985, writ ref'd n.r.e.); DeNina v.
Bammel Forest Civic Club, Inc., 712 S.W.2d 195, 199 (Tex. App.--Houston [14th Dist.] 1986,
no writ).

 Lund argues that to require her to put on evidence that her proposed residents are
handicapped, thereby bringing WAL under the aegis of the FHAA, impermissibly shifts the
burden of proof from the Leibls. She contends that to be entitled to injunctive relief the Leibls must
(1) plead a cause of action against the defendant; (2) prove that they have a probable right to the
relief it seeks upon final hearing; and (3) plead that they will suffer a probable injury. See Walling
v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993) (reversing and remanding court of appeal's
affirmance of trial court's denial of temporary injunction arising out of breach of contract); Sun
Oil Co. v. Whitaker, 424 S.W.2d 216, 218 (Tex. 1968) (affirming denial of temporary injunction
seeking to prohibit use of water for irrigation); Fasken v. Darby, 901 S.W.2d 591, 592 (Tex.
App.--El Paso 1995, no writ) (temporary injunction requiring subsurface mineral owner to
accommodate existing irrigation system held void). Lund argues that proof of "probable injury"
requires proof of imminent harm, irreparable injury, and no adequate remedy at law. See
Henderson v. KRTS, Inc., 822 S.W.2d 769, 773 (Tex. App.--Houston [1st Dist.] 1992, no writ);
Fasken, 901 S.W.2d at 592. Lund further argues that to prove "imminent harm," the Leibls were
required to show what impermissible use of the property Lund was engaged in and then obtain an
injunction enjoining that use. See State v. Morales, 869 S.W.2d 941, 946 (Tex. 1994) (holding
that an injunction will not issue unless it is shown that defendant will engage in activity enjoined). 
Therefore, Lund concludes that the burden of proof rested with the Leibls to show that the
proposed residents of WAL could not lawfully live there; in other words, the burden was on the
Leibls to show that the proposed residents were not handicapped for purposes of the FHAA. We
disagree.

 Lund cites this Court to cases involving general temporary injunctions, but fails to
provide support for her contention that probable injury or irreparable harm must be shown before
a temporary injunction will issue in a case involving the clear and substantial violation of a deed
restriction. As we have stated, in a suit for a temporary injunction to enforce deed restrictions,
a showing of irreparable harm is not necessary before issuing an injunction so long as a distinct
or substantial breach of deed restrictions is shown. See WLR, 690 S.W.2d at 668; DeNina, 712
S.W.2d at 199. In effect, courts view proof of a violation of a deed restriction as adequate
evidence that a probable injury will occur, and that the applicant for a temporary injunction has
a probable right to the relief sought pending a resolution of the dispute on the merits.

 In WLR, the operator of a grocery store sought to enforce a restrictive covenant in
the deed of the property across the street prohibiting the operation of another grocery store so long
as the market owner operated his business. WLR, 690 S.W.2d at 665. In upholding the
injunction, the court of appeals stated that it is not necessary to demonstrate substantial injury or
the extent of actual monetary damages to enforce a deed restriction by injunction once a substantial
and material breach has been found. See id. at 668. Similarly, in DeNina, the court of appeals
affirmed the issuance of a temporary injunction despite a finding of no irreparable harm by the
trial court. See DeNina, 712 S.W.2d at 199. The court held that such a finding was not required. 
See id. ("When a distinct or substantial breach of deed restrictions is shown, the courts will enjoin
the violation even though there is no proof of actual damages or irreparable harm.") (citing
Gunnels v. North Woodland Hills Community Assoc., 563 S.W.2d 334, 337 (Tex. Civ.
App.--Houston [1st Dist.] 1978, no writ) and Protestant Episcopal Church, 339 S.W.2d at 403)). 
In the instant cause, we hold that because a clear violation of the deed restrictions was shown, the
Leibls established their prima facie case, and the burden of proof shifted to Lund to provide a
defense to her failure to comply. As such, we overrule Lund's fourth issue presented.

 Having held that the burden shifted to Lund to provide an affirmative defense to her
failure to comply with the single-family use deed restriction, we do not reach her claim that the
temporary injunction violates the FHAA because the record does not reflect any evidence that she
is entitled to its protection. Specifically, Lund failed to introduce any evidence that the proposed
residents qualified as handicapped for purposes of the FHAA. Lund cites several federal cases
to support her contention that the elderly are per se handicapped. See Potomac Group Home v.
Montgomery County, Maryland, 823 F.Supp. 1285 (D. Md. 1993); United States v.
Commonwealth of Puerto Rico, 764 F.Supp. 220 (D. Puerto Rico 1991); Casa Marie, Inc. v.
Superior Court of Puerto Rico, 752 F.Supp. 1152 (D. Puerto Rico 1990). In these cases,
however, the elderly in question suffered from additional physical and mental impairments other
than mere age.

 The Leibls cite this Court to a case from the Washington Supreme Court that
similarly wrestled with the definition of "handicapped" under the FHAA. See Sunderland Family
Treatment Servs. v. City of Pasco, 903 P.2d 986 (Wash. 1995). In defining "handicapped," the
Sunderland court looked to the federal regulation implementing the FHAA, which provided that
physical or mental impairment includes:


Any mental or psychological disorder, such as mental retardation, organic brain
syndrome, emotional or mental illness, and specific learning disabilities. The term
physical or mental impairment includes, but is not limited to, such diseases and
conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy,
autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease,
diabetes, Human Immunodeficiency Virus infection, mental retardation, emotional
illness, drug addiction (other than addiction caused by current, illegal use of a
controlled substance) and alcoholism.



Id. at 790-91; see also 24 C.F.R. § 100.201(a)(2) (1994). The Sunderland court held that a
proposed group home to house troubled teens did not meet its burden of demonstrating that
troubled teens were "handicapped" under the FHAA merely because the teens were emotionally
disturbed or otherwise neglected. See id. at 991. We find the Sunderland court's reasoning
persuasive.

 After reviewing the cases submitted by both parties, we decline to interpret the
definition of "handicapped" so broadly as to include persons who are merely elderly without
evidence of additional physical or mental impairment. (7) Consequently, because the record before
us is devoid of any evidence of the proposed residents' handicaps, if any, Lund has not met her
burden of showing that the FHAA provides an affirmative defense to her violation of the single-family use deed restriction. We hold that the trial court did not abuse its discretion in issuing the
temporary injunction and overrule Lund's first issue.


Breadth of the Temporary Injunction

 Having upheld the trial court's issuance of the temporary injunction, we now
address Lund's contention that the trial court abused its discretion in the scope of the injunction. 
Specifically, Lund argues that the injunction is impermissibly broad because it prohibits all
construction on the property and further prohibits any operation of an assisted-living facility on
the property. We initially note that Lund mischaracterizes the scope of the injunction issued by
the trial court. Pending resolution of the dispute on the merits, the injunction enjoins "continuing
construction of the Westlake Assisted Living Facility" and further enjoins "beginning operations
or conducting operations of the Westlake Assisted Living Facility." It is axiomatic that we must
limit our review to the injunction as issued by the trial court. See Coalition of Cities, 776 S.W.2d
at 226. We will therefore discuss Lund's challenge to the breadth of the injunction with this
qualification in mind.

 We first address the portion of the injunction that enjoins beginning or conducting
operations of WAL. Lund argues that an injunction is impermissibly broad if it enjoins a
defendant from activities that are a lawful and proper exercise of her rights. See Villalobos v.
Holguin, 208 S.W.2d 871, 875 (Tex. 1948). Lund refers the Court to chapter 123 of the Texas
Human Resources Code, entitled Community Homes For Disabled Persons Location Act. See
Tex. Hum. Res. Code Ann. chap. 123 (West Supp. 1999). This chapter authorizes the licensing
in Texas of community homes to care for disabled persons, and prohibits zoning and deed
restrictions that discriminate against homes so licensed. See id. §§ 123.003, .004, .007. (8) The
chapter limits the number of residents of licensed community homes to not more than six persons
with disabilities and two supervisors. See id. § 123.006. Thus, Lund argues that even if the
FHAA does not apply to allow WAL to house fifteen elderly persons, the injunction should at least
provide for up to six disabled persons and two supervisors. Lund points to testimony in the record
from Kate Kelley, an employee of the Travis County District Attorney's Office, that she had
advised Lund's attorney that WAL could legally house six residents and two caregivers.

 The Leibls respond that WAL, whether used to house six residents or fifteen, must
also comply with the appearance requirements contained in the deed restrictions. The Texas
Human Resource Code supports this argument; it states that to qualify as a community home, an
entity must comply with sections 123.005-123.008 and be "a personal care facility licensed under
Chapter 247, Health and Safety Code, provided that the exterior structure retains compatibility
with the surrounding residential dwellings." Tex. Hum. Res. Code Ann. § 123.004(2) (West
Supp. 1999) (emphasis added). Given the testimony that WAL as presently designed is not
compatible with the surrounding residential dwellings, we hold that the trial court did not abuse
its discretion in issuing an injunction that prohibits beginning or conducting operations of WAL. 
We overrule Lund's third issue presented.

 Lund also asserts that the injunction is impermissibly broad because it halts further
construction on WAL pending the trial on the merits. Lund cites the near-completion (80%) of
the project and the expense ($860,000) already expended. Lund also argues that she should at
least be allowed to move into WAL as her personal residence. We reiterate that the injunction
only prohibits further construction on WAL. Lund remains free to build a single-family residence
on her property that complies with all of the applicable deed restrictions.

 We also note, however, that Lund seeks modification of an equitable order by the
trial court. Lund urges this Court to balance the equities and reduce the scope of the injunction,
pointing to the state of near completion of the project and the amount that Lund has already spent. 
Those who seek equity must have been equitable in their own actions. Tanglewood Homes Assoc.
v. Henke, 728 S.W.2d 39, 47 (Tex. App.--Houston [1st. Dist.] 1987, writ ref'd n.r.e.). In
Tanglewood, the court of appeals ordered the trial court to issue an injunction requiring
homeowners to tear down improvements built in violation of valid deed restrictions where the
homeowners proceeded with the construction despite repeated notification of violations and the
filing of a lawsuit. Id. at 47-49.

 Similar to the situation in Tanglewood, Lund knew of the single-family use
restriction prior to purchasing the property. She began construction while both neighbors were
out of town. She proceeded with construction despite notification of her violation and continued
throughout negotiations and throughout the lawsuit. The trial court made findings that Lund had
been in continual violation since "at least June, 1997." Lund even testified that she would
continue construction of WAL, presumingly along the same design, unless enjoined by the trial
court. Under these circumstances, the trial court did not abuse its discretion when it enjoined
continuing construction on WAL. We overrule Lund's second issue presented.


The Trial Court's Findings of Fact

 Lund's fifth issue attacks the evidence supporting the trial court's finding that WAL
violated the deed restrictions by its appearance. Specifically, Lund argues that the testimony of
the Leibls' expert that WAL was incompatible with the deed restrictions and the surrounding
property lacked the necessary detail to justify the trial court's finding that the construction of WAL
violated the deed restrictions regarding appearance. Without specific evidence of WAL's
violations of the deed restrictions on appearance, Lund concludes that the trial court lacked
sufficient evidence to justify its injunction. We disagree.

 The Leibls' expert testified that he had read the deed restrictions and studied the
designs and the as-built surveys of WAL. He concluded that WAL violated the deed restrictions
in both use and appearance. This conclusion was uncontroverted by Lund at the evidentiary
hearing. In a temporary injunction lawsuit, the trial court should not examine the specific merits
of the case. See Davis, 571 S.W.2d at 861-62. We hold that this expert testimony was sufficient
to justify the issuance of a temporary injunction to maintain the status quo and overrule Lund's
fifth issue.

 Lund's sixth issue challenges the trial court's findings of fact that the Leibls will
likely prevail on the merits. Given the apparent violation of the single-family use deed restriction
and the absence in the record of any defense for Lund's failure to comply, we find this issue
similarly lacks merit. As we have stated, Lund's violation of the single-family use deed restriction
alone established probable injury and a probable right to recovery. Accordingly, we overrule
Lund's sixth and final issue.


CONCLUSION

 The Leibls met their burden by establishing the existence of the single-family use
deed restriction and the substantial violation thereof. At that time, the burden shifted to Lund to
provide an affirmative defense for her failure to comply with the requirement. Because the record
contained no evidence of the proposed residents' handicaps, Lund cannot find protection under the
FHAA. Furthermore, the trial court did not abuse its discretion in prohibiting construction on and
the operation of WAL. Finally, sufficient evidence exists in the record to justify the trial court's
findings that WAL violated the deed restrictions regarding appearance and that the Leibls would
likely prevail at a trial on the merits.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 29, 1999

Do Not Publish

1. For convenience, we shall refer to the appellants collectively as "Lund," and will refer to
the physical structure of the Westlake Assisted Living facility as "WAL." 
2. See 42 U.S.C. §§ 3601-3631 (1994).
3. Lund also did not notify the owners of the third lot in the Subdivision, the McCollums. The
McCollums, who live in Houston, did not join in the lawsuit. However, Ms. McCollum testified
at the evidentiary hearing that the construction of WAL would negatively impact the value of her
property.
4. In the record, the Leibls liken this portion of WAL visible from their property to a "Motel
6."
5. Lund disagrees and argues that the Leibls must show probable injury to be entitled to a
temporary injunction. We will address this argument in turn.
6. The FHAA provides, in relevant part: "It shall be unlawful-- . . . (f) To discriminate in
the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter
because of a handicap of-- (A) that buyer or renter; (B) a person residing in or intending to reside
in that dwelling after it is so sold, rented, or made available; or (C) any person associated with
that buyer or renter." 42 U.S.C.A. § 3604 (1994). Moreover, "any law of a State, a political
subdivision, or other such jurisdiction that purports to require or permit any action that would be
a discriminatory housing practice under this subchapter shall to that extent be invalid." Id.
§ 3615.
7. In so holding, we note the United States Supreme Court's recent opinions limiting the
breadth of the Americans with Disabilities Act of 1990 ("ADA"), holding that individuals
claiming a disability under the ADA should be assessed with regard to any mitigating or corrective
measures employed. See Sutton v. United Air Lines, Inc., 67 U.S.L.W. 4537, 4539-40 (June 22,
1999) (sisters suffering from severe myopia not "disabled" under ADA because visual acuity
correctable to 20/20); Murphy v. United Parcel Serv., Inc., 67 U.S.L.W. 4549, 4550 (June 22,
1999) (truck driver with high blood pressure does not have impairment that "substantially limits"
one or more of major life activities for purposes of ADA). 
8. This chapter defines a person with a disability as a "person whose ability to care for
himself, perform manual tasks, learn, work, walk, see, hear, speak, or breathe is substantially
limited because the person has: (1) an orthopedic, visual, speech, or hearing impairment; (2)
Alzheimer's disease; (3) pre-senile dementia; (4) cerebral palsy; (5) epilepsy; (6) muscular
dystrophy; (7) multiple sclerosis; (8) cancer; (9) heart disease; (10) diabetes; (11) mental
retardation; (12) autism; or (13) emotional illness." Tex. Hum. Res. Code Ann. § 123.002 (West
Supp. 1999). We note that this exhaustive list requires a showing beyond mere advanced age to
qualify as disabled. Thus, in relying on the Texas Community Homes For Disabled Persons
Location Act, Lund falls prey to the same inadequate record that prevented her from claiming the
FHAA as an affirmative defense. 


le
Lund's sixth and final issue.


CONCLUSION

 The Leibls met their burden by establishing the existence of the single-family use
deed restriction and the substantial violation thereof. At that time, the burden shifted to Lund to
provide an affirmative defense for her failure to comply with the requirement. Because the record
contained no evidence of the proposed residents' handicaps, Lund cannot find protection under the
FHAA. Furthermore, the trial court did not abuse its discretion in prohibiting construction on and
the operation of WAL. Finally, sufficient evidence exists in the record to justify the trial court's
findings that WAL violated the deed restrictions regarding appearance and that the Leibls would
likely prevail at a trial on the merits.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 29, 1999

Do Not Publish

1. For convenience, we shall refer to the appellants collectively as "Lund," and will refer to
the physical structure of the Westlake Assisted Living facility as "WAL." 
2. See 42 U.S.C. §§ 3601-3631 (1994).
3. Lund also did not notify the owners of the third lot in the Subdivision, the McCollums. The
McCollums, who live in Houston, did not join in the lawsuit. However, Ms. McCollum testified
at the evidentiary hearing that the construction of WAL would negatively impact the value of her
property.
4. In the record, the Leibls liken this portion of WAL visible from their property to a "Motel
6."
5. Lund disagrees and argues that the Leibls must show probable injury to be entitled to a
temporary injunction. We will address this argument in turn.
6. The FHAA provides, in relevant part: "It shall be unlawful-- . . . (f) To discriminate in
the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter
because of a handicap of-- (A) that buyer or renter; (B) a person residing in or intending to reside
in that dwelling after it is so sold, rented, or made available; or (C) any person associated with
that buyer or renter." 42 U.S.C.A. § 3604 (1994). Moreover, "any law of a State, a political
subdivision, or other such jurisdiction that purports to require or permit any action that would be
a discriminatory housing practice under this subchapter shall to that extent be invalid." Id.
§ 3615.
7. In so holding, we note the United States Supreme Court's recent opinions limiting the
breadth of the Americans with Disabilities Act of 1990 ("ADA"), holding that individuals
claiming a disability under the ADA should be assessed with regard to any mitigating or corrective
measures employed. See Sutton v. United Air Lines, Inc., 67 U.S.L.W. 4537, 4539-40 (June 22,
1999) (sisters suffering from severe myopia not "disabled" under ADA because visual acuity
correctable to 20/20); Murphy v. United Parcel Serv., Inc., 67 U.S.L.W. 4549, 4550 (June 22,
1999) (truck driver with high blood pressure does not have impairment that "substantially limits"
one or more of major life activities for purposes of ADA). 
8. This chapter defines a person with a disability as a "person whose ability to care for
himself, perform manual tasks, learn, work, walk, see, hear, speak, or breathe is substantially
limited because the person has: (1) an orthopedic, visual, speech, or hearing impairment; (2)
Alzheimer's disease; (3) pre-senile dementia; (4) cerebral palsy; (5) epilepsy; (6) muscular
dystrophy; (7) multiple sclerosis; (8) cancer; (9) heart disease; (10) diabetes; (11) mental
retardation; (12) autism; or (13) emotional illness." Tex. Hum. Res. Code Ann. § 123.002 (West
Supp. 1999). We note that this exhaustive list requires a showing beyond mere advanced age to
qualify as disabled. Thus, in relying on the Texas Community Homes For Disabled Persons
Location Act, Lund falls prey to the same in