

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00615-CV

Kelly Reid **WALLS**,
Appellant

v.

Daniel **KLEIN**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-11285
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
    Sandee Bryan Marion, Justice
    Marialyn Barnard, Justice

Delivered and Filed:  March 13, 2013

AFFIRMED AS MODIFIED

This is an accelerated, interlocutory appeal in which appellant, Kelly Walls, appeals a temporary injunction granted in favor of appellee, Daniel Klein.  Walls contends the temporary injunction should be dissolved because (1) it constitutes a prior restraint on Walls's constitutional right of free speech, (2) the remedy of specific performance is not available for an alleged breach of contract not to defame, and (3) the trial court abused its discretion in granting the temporary injunction because Klein failed to show Walls posed an immediate threat of irreparable harm.  We modify the temporary injunction and we affirm as modified.

**BACKGROUND**

Walls and Klein were in a romantic relationship. After their relationship ended, disputes arose between the parties. Walls's attorney sent a letter to Klein's attorney threatening to file a suit for damages against Klein for claims including intentional infliction of emotional distress, assault, fraud, and defamation. After receiving this letter, Klein and Walls entered into an agreement and settled their disputes wherein Walls agreed, amongst other things, to release all claims against Klein in exchange for a sum of $30,000. The Settlement Agreement and Full and Final Release, signed on April 26, 2012, included a "Confidentiality and Non-disparagement" clause which, in relevant part, stated:

> The Parties agree and acknowledge that they will not disparage one another. The Parties will have no further contact with each other in any form, their respective family members and close friends relating in any way to the Claims or the matters alleged in the Claims Letter.

In the Agreement, Walls affirmed "she has not previously made and will not make in the future any claims, allegations or complaints against or relating to Klein with any agency, including . . . the San Antonio Police Department (other than her prior verbal complaint on January 15, 2012), . . . or any licensing or regulatory board regarding or in any way related to the Claims or the matters alleged in the Claims Letter."

The agreement also included a provision entitled "Contractual Agreement" that provided:

> It is expressly understood and agreed that the terms of this Agreement are contractual and not merely recitals. In the event any dispute concerning a right or obligation specifically created under the terms of this Agreement arises, such right or obligation shall be enforceable in a court of equity by specific performance. This remedy shall be in addition to any other remedy available at law or equity.

Further, the agreement included a provision entitled "Voluntary Execution of Agreement" that provided:

> The Parties expressly represent and warrant that they have participated in the negotiation and preparation of this Agreement, and that they are executing this

Agreement voluntarily, with the benefit and advice of counsel, without any duress, coercion, or undue influence.

In July 2012, shortly after the Agreement was signed, Walls filed an original petition for injunctive relief against Klein. Walls alleged Klein continued to "stalk, harass, and humiliate" her in violation of the no-contact and non-disparagement clauses contained in the Agreement by attempting to run her and her pets over with his vehicle and by following her in his vehicle and calling her foul names. Walls reported both incidents to the San Antonio Police Department. The trial court granted Walls an ex parte temporary restraining order against Klein and set a hearing on a temporary injunction.

Klein filed an answer to Walls's suit as well as a counter-claim against Walls seeking his own temporary injunction and asserting claims for defamation, breach of contract, and invasion of privacy. Klein alleged Walls was needlessly walking in front of his residence, sending threatening emails to his close friends, sending anonymous, disparaging emails to members of the religious institution he attended, and making disparaging and derogatory remarks in an attempt to injure him. Specifically, Klein alleged Walls posted on her Facebook page that she intended to publically disparage Klein with the launch of a website containing photographs of him that Walls had taken while they were still in a relationship.

A hearing was held and the trial court denied Walls's application for temporary injunction and granted Klein's application for temporary injunction. The trial court found Klein will likely prevail on the trial of this cause, Walls intends to harm and injure Klein, and Walls intends to violate her obligations under the Agreement previously entered into between the parties.

Walls objected to the language of the order granting Klein's application for temporary injunction. At the hearing on the motion to enter order, Walls argued the language was overly

vague and imposed prior restraint on her, that Klein presented no evidence to support the injunction, and that she had not violated the Agreement. The court modified sections of the temporary injunction and signed the modified temporary injunction. Walls then filed a motion to dissolve the temporary injunction, which the trial court denied. This accelerated appeal followed.

## STANDARD OF REVIEW

The decision to grant a temporary injunction lies within the sound discretion of the trial court. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). An appellate court may not substitute its judgment for that of the trial court. *Menna v. Romero*, 48 S.W.3d 247, 252 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). "Rather, we limit our review to whether there has been a clear abuse of discretion." *Id.* (citing *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978)).

"At the hearing for a temporary injunction, the only question before the trial court is whether the applicant was entitled to an order to preserve the status quo pending trial on the merits." *Henderson v. KTRS, Inc.*, 822 S.W.2d 769, 773 (Tex. App.—Houston [1st Dist.] 1992, no pet.). The trial court must state the reasons why it deems the temporary injunction appropriate to prevent injury to the applicant. *Id.*

## PRIOR RESTRAINT

In her first issue, Walls contends the following paragraphs of the temporary injunction impose a prior restraint on her protected speech by commanding her to desist and refrain from:

> (1) Communicating . . . with any person, entity, organization, agency or religious institution regarding or concerning Klein . . . concerning any allegation or matter set forth in the Agreement and any exhibits attached thereto, except as may be necessary to defend herself in this action, or to respond to an investigation by a governmental agency initiated by that agency; (2) Publishing or attempting to publish on any website, including but not limited to Facebook, any fictional narrative concerning or based, in whole or in part, on Klein, without his written consent or without leave of court; (3) Publishing to any third parties in any form or fashion any photographs or depictions of

Klein, without his written consent or without leave of court; (4) Interfering with Klein's personal, familial, or business relationships or the relationship between Klein and [his religious institution] by intentionally, knowingly, or recklessly making anonymous false complaints and reports to governmental, private, and religious regulatory agencies; . . . and (7) Disparaging and/or defaming Klein in any mode, form, or fashion whatsoever.

Walls cites and relies on *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101 (Tex. App.—Austin 2003, no pet.) in which the Austin Court of Appeals held a temporary injunction restraining defamatory speech was unconstitutional. *Id*. at 113–14. In concluding the Brammers did not waive their free speech rights by signing an agreement not to disparage KB Home, the court stated, "if free speech rights can be waived in Texas, a court must find clear and convincing evidence that the waiver is knowing, voluntary and intelligent." *Id*. at 110 (footnote omitted). The court pointed out KB Home failed to present any evidence at the hearing on the temporary injunction to show that when the Brammers signed the Agreement they "knowingly, voluntarily, and intelligently agreed to waive the constitutional safeguards implicated by defamatory or disparaging speech." [1] *Id*. The court took note that the Brammers themselves never testified at the temporary injunction hearing. We believe the case before us is distinguishable. Here, Walls testified at the hearing and indicated she had signed the Agreement:

The Court: Is this your mediated settlement agreement?

[Walls]: Yes, sir, it is.

---

[1] The court in *KB Home* also emphasized the impact of public concern on its decision not to limit the Brammer's disparaging speech. The court stated: "Regardless of the veracity of such disparagement, the criticism of the business can be reasonably related to social views that are strongly held by the speakers. Here, the Brammers spoke as members of a group advocating legislation to protect buyers of new homes from unscrupulous homebuilders, which arguably is an issue of public concern." *Brammer*, 114 S.W.3d at 108. The court further stated: "Nonetheless, KB Home has not referred us to, nor have we located, a Texas case upholding a temporary injunction to enforce a contract like the one at issue here: a contract not to defame or disparage on issues that, arguably, are of social concern." *Id*. at 109. There are no similar issues of social or public concern in the instant case. Here, the parties are persons, not businesses, and the Agreement was not to disparage on issues relating personally to the parties—issues that cannot be classified as those of social concern.

> The Court: And in this agreement did you and Mr. Klein reach any agreement regarding him staying away from you or you staying away from him or don't disparage each other —
>
> [Walls]: Not to disparage, yes, sir.

Walls also confirmed she received $30,000 in exchange for their agreement. This in-court testimony, coupled with the language of the Agreement in which Walls agreed she was "executing this Agreement voluntarily, with the benefit and advice of counsel, without any duress, coercion, or undue influence," leads us to conclude that Walls, unlike the Brammers in *KB Home*, "knowingly, voluntarily, and intelligently agreed to waive the constitutional safeguards implicated by defamatory or disparaging speech" against Klein when she signed the Agreement. *See id.* at 110.

Having determined Walls voluntarily and knowingly entered into the Agreement to not use disparaging speech against Klein, we must now determine whether the specific paragraphs in the temporary injunction against Walls are overly broad. In *French v. Community Broadcasting of Coastal Bend, Inc.*, 766 S.W.2d 330 (Tex. App.—Corpus Christi 1989, writ dism'd w.o.j.), the court held an injunction seeking to enforce a covenant not to compete was overly broad and, therefore, improper. The court held: "The non-competition agreement in this case prohibited French from entering into direct or indirect competition with CBCB. The injunction prohibited French from engaging in activities well beyond the express prohibitions of the covenant." *Id.* at 335–36. The court discussed how, even though the underlying covenant not to compete was valid, the temporary injunction must be careful to prohibit only activities within the scope of that covenant and not those only "marginally covered by it;" especially "[w]hen those marginally prohibited activities are also activities that have strong constitutional . . . protection . . . ." *Id.* at 335. Accordingly, if paragraphs (1), (2), (3), (4), or (7) of the temporary injunction prohibit

activity beyond the scope of the provisions she agreed to in the underlying Agreement they are overly broad and, thus, are improper.

Walls agreed in the Settlement Agreement to "not disparage one another" and to "have no further contact with each other in any form, their respective family members and close friends . . . ." At the hearing, Klein entered into evidence a Facebook post created by Walls on May 30, 2012, after the Agreement was signed, that stated: "I am excited to begin a new art project utilizing photographs and text. 'Veracity of a Lush Life' is a fictional narrative of a narcissistic, passive-aggressive drug dealing prostitute named Samuel. Web site should be live soon." Klein testified at the hearing that he knew this referred to him and his friends knew it referred to him as well. Klein has been the host of a radio show entitled "Lush Life" for eleven years and Klein manages a Facebook page entitled "Lush Life" to promote his radio show. Additionally, "Samuel" is the name of Klein's father. Klein further testified he knew the photographs Walls intended to use in her "art project" were of the two of them that had been taken in private while they were still in a romantic relationship.

Clearly, posting a website with pictures of Klein in a "fictional narrative" about a "narcissistic, passive-aggressive drug dealing prostitute" is disparaging to Klein. Walls specifically agreed, in exchange for a substantial amount of money, "not to disparage" Klein. At the hearing, Walls asserted Klein gave his permission to use the photographs in a "fictional narrative." However, the only question before the trial court was whether Klein was entitled to an order to preserve the status quo pending trial on the merits. *See Henderson*, 822 S.W.2d at 773. Whether Klein gave permission is a question of fact to be addressed at the trial on the merits. Before its resolution, the trial court's temporary injunction serves to maintain the status quo and prevent Walls from posting such potentially disparaging material in violation of the Agreement. We therefore conclude the trial court did not abuse its discretion in ordering Walls

to desist and refrain from the activities in paragraphs (2), (3), and (7) of the temporary injunction because these activities are within the scope of the non-disparagement/non-contact provisions of the underlying Agreement.

As to paragraph (4), Klein testified that Walls recently started attending the same religious institution Klein had attended for the past fifteen years. After the Agreement was signed, Walls continued to attend the same religious institution and, according to Klein, Walls would attend every night Klein played in the band and stare at him in an uncomfortable fashion. Klein testified this "was particularly unnerving and rattling" to him. Klein also testified Walls urged the church leadership to prohibit Klein from working with the youth on any church trips by filing complaints against Klein to the leadership, falsely accusing him of dealing drugs while his child was in the house. Making accusations against Klein at his religious institution that he was selling drugs with his child in the house, a crime for which Klein has not been charged, is an attempt to disparage Klein to the leadership of his church. Accordingly, we conclude the language in paragraph (4) of the temporary injunction prohibiting Walls from "[i]nterfering with Klein's personal, familial, or business relationships or the relationship between Klein and [his religious institution] by intentionally, knowingly, or recklessly making anonymous false complaints . . ." is within the scope of the Agreement and, therefore, was not overly broad.

Walls claims paragraph (1), prohibiting her from "[c]ommunicating . . . with any person . . . regarding or concerning Klein . . .," is overly broad in that it bars her "from communicating with medical providers regarding the permanent injuries she suffered as a result of Appellee's sexual assault of her." According to the record, this is in reference to a sexually transmitted disease she allegedly received from Klein. We find no merit to her argument that paragraph (1) restricts her from obtaining medical treatment. The trial court stated at the hearing, "I think its clear to everybody in this court that the injunction was never intended for you not to

communicate with your medical healthcare entities of any kind your condition or for treatment." We agree with the trial court and conclude appellant's argument that paragraph (1) is overly broad by prohibiting her from communicating with medical providers about treatment is without merit.

Walls also claims paragraph (1) is "so overly broad and restrictive that it even forbids [her] from communicating with law enforcement and governmental agencies regarding [Klein's] illegal activities."  Because the language of the injunction prohibits Walls from reporting any illegal conduct by Klein that may be directed at her, we conclude this provision of the temporary injunction is overly broad.  It is within an appellate court's discretion to modify an injunction that is overbroad. *Center for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 347 (Tex. App.—Austin 2001, no pet.).  We hereby modify paragraph (1) of the injunction by adding the following italicized language.  Walls must desist and refrain from:

(1) Communicating, directly or indirectly, in any mode or fashion, with any person, entity, organization, agency or religious institution regarding or concerning Klein, including, without limitation, the use of anonymous email or other communications or communications through a third party, concerning any allegation or matter set forth in the Agreement and any exhibits attached thereto, except as may be necessary to defend herself in this action, or to respond to an investigation by a governmental agency initiated by that agency, *or to report any truthful incidents of illegal conduct directed at her to law enforcement*;

We conclude all the activities the trial court prohibited Walls from engaging in were within the express non-contact and non-disparagement prohibitions of the Agreement and were proper, with the exception of paragraph (1), which we conclude was overly broad and we have modified.

## SPECIFIC PERFORMANCE

Next, Walls contends the remedy of specific performance is not available in a suit for breach of contract not to defame and, therefore, the temporary injunction should be dissolved.

Walls argues in her brief: "Specific performance, as a matter of law, is not an available remedy in a defamation suit because there is an adequate remedy at law by way of an action for monetary damages."

In the Agreement, Walls specifically agreed "not to disparage" Klein and the Agreement clearly provided for specific performance as a means of enforcing the agreement: "In the event any dispute concerning a right or obligation specifically created under the terms of this Agreement arises, such right or obligation shall be enforceable in a court of equity by specific performance." We believe the temporary injunction was a proper means of maintaining the status quo by enforcing the Agreement Walls and Klein agreed to pending a trial on the merits.

## ABUSE OF DISCRETION

Finally, Walls argues the trial court abused its discretion in granting the temporary injunction because Klein failed to show Walls posed an immediate threat of irreparable harm. Walls contends the record shows "no evidence that [Klein] had lost any customers or was physically harmed or threatened in any manner."

To obtain a temporary injunction, an applicant must prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). It is an abuse of discretion when the trial court misapplies the law to the established facts or if it concludes the applicant has demonstrated a probable injury when that conclusion is not reasonably supported by the evidence. *Brammer*, 114 S.W.3d at 106. An appellate court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204.

To enter a temporary injunction, the trial court must find a "*probable*, imminent, and irreparable injury in the interim." *Id*. (emphasis added). Walls's argument that there was "no

evidence that [Klein] had lost any customers or was physically harmed or threatened in any manner" by her assumes the injury must have already occurred. However, the trial court only need find a probable injury. A temporary injunction would serve no purpose if the injury must have already occurred in order for it to be granted. *See Henderson*, 822 S.W.2d at 773 (citing *Transport Co. of Tex. v. Robertson Transp. Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953)) (asserting purpose of temporary injunction is to maintain status quo and stating a trial court must "state the reasons why the court deems it proper to issue the writ to *prevent* injury to the applicant, including any reasons why the court believes the applicant's *probable* rights will be endangered if the writ is not issued") (emphasis added).

Klein testified that Walls continued to attend the same religious institution as he, and she had made false "accusations and threats" to the leadership regarding Klein's behavior, and that Walls had been escorted out of the religious institution due to her disruptive behavior. Klein testified this had interfered with his relationships there to the extent that he had discontinued attending. Klein also testified at the hearing and entered into evidence Walls's comments on her Facebook wall indicating her intention to publish a website containing photographs of Klein, portraying him in a disparaging light as a "narcissistic, passive-aggressive drug dealing prostitute."

In the order granting a temporary injunction, the court found that without the temporary injunction Walls would "thereby alter the status quo and tend to make ineffectual a judgment in favor of Klein, in that the loss of his business, familial, and personal relationships, including the religious institution of his choice . . . will damage Klein's good will and existing and future relationships with his clients, customers, son [sic] father, and other members of [his religious institution], that such damage would be irreparable and inestimable, and that unless Walls is

deterred from carrying out that intention, Klein will be without any adequate remedy at law for his losses."

On review of the evidence presented at the hearing indicating the website Walls threatened to publish and demonstrating Klein had already been forced to stop attending his religious institution due to Walls's interference with his relationships there, we conclude the trial court did not abuse its discretion in finding Walls posed a threat of immediate and irreparable harm to Klein in the form of further damage to his reputation and relationships and thereby granting the temporary injunction in Klein's favor.

## CONCLUSION

Based on the foregoing, we conclude (1) the temporary injunction did not constitute a prior restraint on Walls, (2) the temporary injunction was a proper means of maintaining the status quo pending trial, and (3) the trial court did not abuse its discretion in granting the temporary injunction. However, because we conclude paragraph (1) of the temporary injunction is overly broad, we modify it accordingly. We affirm.

Sandee Bryan Marion, Justice